NATIONAL CAPITAL HOUSING
AUTHORITY, Appellant,

v.

Linda DOUGLAS, Appellee.
No. 8422.

District of Columbia Court of Appeals.

Argued Oct. 24, 1974.

Decided Feb. 26, 1975.

Julian Karpoff, Kensington, Md., for appellant.

Mary Ann Bannan, law student counsel, for appellee. Robert C. Plows, law student counsel, Dudley R. Williams, Washington, D. C., and John E. Scheuermann were on the brief for appellee.

Before REILLY, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

REILLY, Chief Judge:

This appeal raises the issue of whether or not a trial court has discretion to stay a

judgment for summary possession for two years conditioned upon the tenant's paying accrued and overdue rent in monthly installments over such period in addition to such rent as would be regularly due by reason of continuing occupancy.

Appellant is a federal agency charged with providing housing for low-income residents of the District of Columbia.[1] It entered into a month-to-month rental agreement with appellee-tenant. After this tenant had fallen more than a year behind in rent payments, the agency brought an action for possession. D.C.Code 1973, § 16–1501 et seq. In responsive pleadings and in testimony at trial, the tenant contended that the agency had violated its implied warranty of habitability—a doctrine accepted in this jurisdiction after its formulation by the United States Court of Appeals in Javins v. First National Realty Corporation,[2] 138 U.S.App.D.C. 369, 428 F.2d 1071, cert. denied, 400 U.S. 925, 91 S. Ct. 186, 27 L.Ed.2d 185 (1970). Specifically, the tenant defended her failure to pay rent by alleging that from time to time the apartment was deficient in electrical wiring, plumbing, and plastering. The agency did not offer countervailing testimony.

After hearing this testimony, the trial court made a finding that the total amount of unpaid rent was $868.67. From that sum, the court allowed the tenant a 15 percent (15%) *Javins* setoff on account of the asserted maintenance deficiencies. The court held that a balance of $756.54 was owed by the tenant.

The court then issued a judgment for possession but in the same order stayed the execution of such judgment for two years during which time the tenant was required to pay $600 in installments of $25 per month, and to meet current rental obliga-tions. The remaining amount, $156.54, was to be paid within seven days from the date of the order. It is the two-year period of the stay which appellant assigns as error.

■ In a summary possessory action based on nonpayment of rent, it has been the practice of trial judges in the landlord and tenant branch of the Superior Court under Trans-Lux Radio City Corp. v. Service Parking Corp., D.C.Mun.App., 54 A.2d 144 (1947) (and authorities cited therein), to compute the total amount of rent owed by a tenant refusing to surrender the premises, even though the landlord is not seeking a judgment for back rent. Thus, although appellant here included no prayer for unpaid rent in its complaint, the trial court properly determined the precise amount of rent legally due, including the calculation of the setoff.

In *Trans-Lux, supra* at 146, former Chief Judge Hood explained this procedure:

At least since Sheets v. Selden, 7 Wall., U.S., 416, 19 L.Ed. 166, it has been the rule in this jurisdiction that a court of law or equity may relieve a tenant from forfeiture of his lease for nonpayment of rent by permitting him before or after judgment, so long as he is in possession, i. e., before "execution is executed," to pay the rent due, with interest and costs. Upon this being done, a final stay of proceedings is ordered.

■ It is also clear from this opinion, however, that the trial court exceeded its authority in deferring the tenant's obligation to pay the full amount due for an extended period. The rule in this jurisdiction—as reaffirmed in the *Trans-Lux* case—is that all accrued past rent must be unconditionally tendered before any stay of

---

1. The National Capital Housing Authority was an agency of the United States at the time of commencement of this suit. Effective July 1, 1974, the agency was transferred to the District of Columbia government which is now responsible for its administration. D.C. Code, 1974 Supp., § 5–103a.

2. This court has held that the Javins doctrine applies to government-sponsored as well as privately-owned housing. Coleman v. United States, D.C.App., 311 A.2d 496 (1973).

execution can issue. *Trans-Lux* was an appeal from an order directing a judgment for possession entered satisfied of record, where the tenant had deposited the original amount due in the registry of the court, but insisted on litigating accrued interest and costs. In reversing, this court held—

> The tender is not made to satisfy the judgment, because the judgment is for possession. Tender is made as a basis *for staying enforcement* of the judgment and if the tenant is either unwilling or unable to pay all that is justly due the landlord at the time of tender there is no basis, legal or equitable, for restraining the landlord from enforcing his judgment. In other words, a tenant seeking relief from forfeiture of his lease must be prepared to square his account with his landlord. [*Id*. at 148; emphasis added.]

 As rationale for its "stay-installment" plan, the trial court cited one of its own prior decisions, United States v. Murphy, Super.Ct. L&T No. 85917–37 (1974), where a similar order was entered. In that case, the court held that the tenant would suffer "undue hardship" if the judgment for possession was executed, because low-income tenants of National Capital Housing Authority rental units could not possibly make a full tender in order to obtain a stay. This holding cannot be reconciled with a decision of this court, where much the same contention of hardship was raised and rejected on the ground that a trial court lacks power to stay even temporarily the execution of a writ of restitution if the full tender was not made first. Conrad v. Medina, D.C.Mun.App., 47 A.2d 562 (1946). The opinion in that case did commend the practice of many landlords in responding to efforts of the landlord and tenant branch to settle controversies by conciliation during times of housing shortages. We share that view but we also are

compelled to recognize the proposition that an "[e]xercise of judicial discretion . . . must not be founded upon what an individual judge believes are abstract ideas of justice, but upon recognized legal or equitable principles." *Id*. at 565; footnotes omitted.

■ The tenant also contends that the equitable defense of laches should apply,[3] pointing out that before bringing suit, the agency let many months go by after the tenant had ceased to pay rent. It is apparent, however, that any prejudice suffered by the tenant—because of the landlord's failure to act immediately after the first default—was largely self-imposed. As a party to the rental agreement, the tenant could scarcely be ignorant of increasing financial obligations by reason of continued occupancy of the premises and failure to pay rent. Under such circumstances the defense of laches was not available. *See* 30A C.J.S. Equity §§ 111–117 (1974).

Reversed and remanded for further proceedings consistent with this opinion.

---

3. Although the trial court held that laches could not apply as a defense to the government's complaint, its conclusion that the government pursued this suit with a "lack of due diligence" may have been a factor in shaping the terms of the challenged stay.