**In re D.C. DIAMOND HEAD, INC., Debtor.**

**Bankruptcy No. 84–00020.**

United States Bankruptcy Court, District of Columbia.

April 22, 1985.

Mark F. Wereblood, Arlington, Va., Richard Fehrenbacher, Washington, D.C., for debtor.

Reuben B. Robertson, Ingersol & Block, Washington, D.C., for movant.

OPINION

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

This case presents difficult questions of interpretation of local District of Columbia law with respect to landlords' and tenants' rights. Nevertheless, based on my research, I am firmly convinced, for the reasons stated below, that as of the date of the filing of this case the tenant did have a right under local law to avoid forfeiture of the leasehold interest, and, by virtue of the provisions of sections 362(a) and 365(b) and (d) of the Bankruptcy Code (as they apply to cases pending prior to October 8, 1984), that the right to avoid forfeiture (or, expressed differently, the right to redeem) continues to exist and will continue until "any time before the confirmation of

a plan"[1] in this Chapter 11 case. This decision is based upon analysis of *Trans-Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C.1947), and its progeny. The *Trans-Lux* case itself states:

> At least since *Sheets v. Selden*, 7 Wall., U.S., 416, 19 L.Ed. 166, it has been the rule in this jurisdiction that a court of law or equity may relieve a tenant from forfeiture of his lease for nonpayment of rent by permitting him before or after judgment, so long as he is in possession, i.e., before "execution is executed," to pay the rent due, with interest and costs. Upon this being done, a final stay of proceedings is ordered.

*Id.* at 146. *See generally* Annot., 31 A.L.R.2d 321 (relief against lease forfeiture). The court reasoned in *Trans-Lux* that:

> The ground for granting relief to the tenant is that the provision of the lease giving the landlord the right to repossess for nonpayment of rent is in substance merely security for payment of rent, and that upon payment of the arrears, interest and costs, the landlord has complete compensation and has no need to resort to his security.

*Id.* at 147. In *Trans Lux*, the court ruled that, once the tenant did make the proper tender of the full amount due, a permanent stay of execution on the writ of restitution would issue. *Trans Lux* has been cited with approval and has been followed in a number of other subsequent cases in the District of Columbia Court of Appeals, now the definitive interpreter of local law here,[2] and its predecessor the Municipal Court of Appeals for the District of Columbia.

The *Trans-Lux* case was followed in *Burrows Motor Co., Inc. v. Davis*, 76 A.2d 163 (D.C.1950), which involved a landlord's claim that the tenant forfeited the lease by assigning it in violation of an anti-assignment clause. There the court stated that "[f]orfeiture of a leasehold for conditions broken and restrictions upon the right to assign are both looked upon with disfavor."[3] *Id.* at 164 (footnote omitted). Citing *Trans-Lux*, the court in *Burrows* also held that, even though the defendant corporation was overdue in the payment of its rent by four days beyond the five day grace period that was provided for in the lease, the trial court was nevertheless justified in allowing the tenant to continue on the premises. The court again based its decision on avoidance of forfeiture, stating:

> It is well established that as a general rule equity will relieve against a forfeiture caused by nonpayment of rent unless it is unjust or inequitable to do so, the only condition precedent to such relief being the tender or payment of the arrears with accrued interest. This rule is based upon the theory that such forfeitures are intended merely as a security for the payment of money and are not intended to enable the landlord to obtain undue advantage of the tenant. We are clear that the tenant was entitled to avoid a forfeiture by the tender which was made.

*Id.* at 165. In the instant case, forfeiture may be especially severe. Not only would the tenant lose the valuable right to continue leasing the property at the originally agreed-upon rental rate and time period,[4]

---

**1.** 11 U.S.C. § 365(d)(2), as it applies to cases, like this one, which were filed before October 8, 1984, the effective date of the 1984 Bankruptcy Amendments.

**2.** *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C.1971).

**3.** The Bankruptcy Code not only disfavors anti-assignment clauses, it generally nullifies them in behalf of debtors in bankruptcy. 11 U.S.C. § 365(c)(1)(A); *but see* 11 U.S.C. § 365(b)(3)(C), (D), as amended in 1984, relating to shopping center leases.

**4.** *See 1010 Potomac Assocs. v. Grocery Manufacturers of America, Inc.*, 485 A.2d 199 (D.C.App.

1984), holding that a landlord cannot lawfully, reasonably withhold consent to a sublease to a suitable tenant in order "to improve upon the bargain negotiated in the prime lease"; *see also In re Madison Hotel Assocs.*, 749 F.2d 410, 420–21 (7th Cir.1984); "Frequently, the interest rates on long-term loans are substantially less than the current market rate.... The legislative history of [11 U.S.C. §] 1124(2) reveals that a creditor who is prevented from exercising a contractual and/or legal right of acceleration, but who receives the complete benefit of its original bargain with the debtor, is 'not impaired' for purposes of Chapter 11 analysis."

but it might also lose valuable personality located on the premises because the lease contains a clause that all fixtures on the premises not removed by the tenant before expiration of the lease will revert to the landlord. According to the landlord, those fixtures have a value of approximately $20,000 "if sold at auction."

To the same effect as *Trans-Lux* and *Burrows* is *De Sales Street Corp. v. Dragon, Inc.*, 163 A.2d 623 (D.C.1960), which involved a ten-year lease. There, the court allowed avoidance of lease termination even at the time when a United States Marshal attempted in January 1960 to serve upon the tenant corporation an alias writ of restitution on the basis of a 1958 judgment. At the time of the attempted service, the tenant "made an unconditional tender of all monies due," and the court thereupon upheld a permanent stay of execution, holding that the trial court properly "afford[ed] the [tenant] corporation equitable relief from the imminent termination of its lease" because the landlord "continuously indulged the corporation's delinquencies and thus waived any right he ... might otherwise have had to abruptly terminate the lease and gain possession of the premises without giving the corporation the opportunity to redeem itself." *Id.* at 624.

The more recent cases discussing *Trans-Lux* include *Davis v. Rental Associates, Inc.*, 456 A.2d 820 (D.C.1983) (en banc). In *Davis*, none of the eight participating judges questioned, and six of them specifically affirmed, the continuing vitality of "the so-called redemption doctrine established by this Court in *Trans-Lux*." *Id.* at 830. Chief Judge Newman, dissenting, argued: "This case closely parallels *Trans-Lux*, a case which the plurality strains to avoid." *Id.* at 834, 835 (Newman, C.J., dissenting). Judges Kelly and Mack dissented on grounds unrelated to and containing no hint of any challenge to the *Trans-Lux* doctrine. *Id.* at 837 (Kelly and Mack, JJ., dissenting). Judge Ferren, concurring in the judgment only, noted that "under the doctrine of *Trans-Lux* ..., appellant—despite the court's order here—

still could effect a stay of eviction by tendering to the landlord 'all accrued rent to date of tender, interest on all accruals from date of accrual to date of tender, and all costs.' " *Id.* at 831 (Ferren, J., concurring) (quoting *Trans-Lux*, 54 A.2d at 148). And the four-judge plurality opinion stated:

[In *Trans-Lux* ], we reaffirmed the rule that a tenant lawfully occupying the premises might stay his eviction even after the landlord has obtained judgment for possession by paying to the landlord before 'execution is executed' the rent due, together with all interest and costs owed at the time of tender. In no way does our holding today impinge upon the proposition enunciated in *Trans-Lux*.... Our holding does *not* preclude the tenant, after judgment is entered against him for violation of the protective order, from proceeding to tender to the landlord all monies due and owing before 'execution is executed,' as provided by *Trans-Lux*, [54 A.2d] at 146.

.... Redemption, a doctrine that does not require the court to serve as referee, permits the tenant to remain on the premises he leases if he pays the landlord directly all the rent, interest, and costs owed before the landlord actually attempts to re-enter the premises.

456 A.2d at 830 (emphasis in original; footnotes omitted).

The case of *Molyneaux v. Town House, Inc.*, 195 A.2d 744 (D.C.1963), involved a permanent stay of execution of a judgment of eviction and writ of restitution for nonpayment of rent, based on the landlords' waiver. There, the landlords, in accordance with a lease clause, gave ten days' written notice of lease termination, based on both nonpayment of rent and another default. Then they filed suit for possession and for rental arrears. Soon they filed a second suit for possession, alleging default in payment of rent for a period after the date when, according to the first suit, the lease had terminated. The court held that the second suit was "tantamount to a waiver of the prior breaches" on which the first suit was based. More pertinent to

this case, the court in *Molyneaux* repeated almost verbatim the language from *Trans-Lux* which is quoted at the outset of this opinion:

> In landlord and tenant cases, it is now well settled in this jurisdiction that a court of law or equity may relieve a tenant in possession from forfeiture of a lease for nonpayment of rent by permitting him before or after judgment to pay the rent due.

*Id.* at 746.

In the instant case, the lease contained a notice-of-termination clause similar to that in *Molyneaux.* The landlord sent the notice and then, after expiration of the 15-day notice period, brought suit and obtained a default judgment for possession. The tenant filed a motion to vacate the default, but (before the scheduled hearing on that motion) the tenant filed its voluntary Chapter 11 bankruptcy petition in this Court, thus triggering 11 U.S.C. § 362's automatic stay against continuation of the landlord-tenant proceeding and against enforcement of the judgment for possession.

No contention was made at any of the hearings on the landlord's motion for relief from the automatic stay that the tenant's failure to pay rent was for any reason other than inability to pay because of lack of funds. Thus, the exception to the *Trans-Lux* rule, mentioned in *Trans-Lux* itself, for cases where the tenant's "default in payment of rent is willful, calculated and persistent," 54 A.2d at 146, does not apply here. Indeed, the landlord's counsel acknowledged and conceded at the January 16, 1985 hearing that the notice of termination in this case was grounded solely on failure to pay the base rent, and made no mention of any default in payment of additional rent calculated on a percentage of receipts, simply because the landlord knew the tenant was in severe financial straits. Hearing, 1/16/85, Tr. 33–34.

Even if the landlord had contended that the tenant's failure to pay was "willful, calculated and persistent," this court would reject that contention based on the record in this case. Attached to the parties' pleadings in this court are copies of some of the papers presented in the Landlord-Tenant Court. Among the seventeen separate defenses stated by the tenant/defendant in the Answer which it tendered in the Landlord-Tenant case in conjunction with its motion to vacate the default judgment (but which was never formally filed in that court because of the intervention of this bankruptcy proceeding) was the defense that the Landlord-Tenant case was "in retaliation against defendant for defendant's good faith decision to withhold rent because of the existence on or about the subject premises" of breaches of the landlord's lease obligations (including, apparently, unrepaired air conditioning and elevators). Not infrequently, an impecunious party will raise numerous justifications for nonpayment which a financially solvent party would not bother to press. Based on the entire record in this case, this Court is convinced that, notwithstanding the bare allegation in the unfiled Landlord-Tenant Court Answer, the primary and overriding reason for nonpayment was lack of funds, as both tenant and landlord well knew.

■ In any event, a "good faith decision to withhold rent" was also involved in *Trans-Lux* itself, and the court there held that, since the tenant's legal position was "neither fanciful nor arbitrary," it did not constitute "willful default in view of the tenant's consistent position that it was ready and willing to pay such rent as was ultimately determined by the court to be proper." 54 A.2d at 146. Similarly, in this case, this Court is convinced that withholding of rent can be "in good faith" even if based on an erroneous (though not "fanciful") view of the law. Moreover, this Court believes that, notwithstanding the contrary panel decision in *Interstate Restaurants, Inc. v. Halsa Corp.*, 309 A.2d 108 (D.C.1973), a tenant of commercial premises could "in good faith" argue for an extension to commercial leases of the doctrine enunciated in *Javins v. First National Realty Corp.*, 428 F.2d 1071, 1082 (D.C. Cir.), *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970)—the doctrine

that, as to rental housing, "the tenant's obligation to pay rent is dependent upon the landlord's performance of his obligations, including" his implied warranty of habitability.

In support of its motion for relief from the stay, the landlord has sought to distinguish this case from *Trans-Lux* by reference to the dual nature of real estate leases as both contracts and also conveyances of interests in land. The *Trans-Lux* lease, the landlord claims (and the tenant does not deny), contained no notice-of-termination clause such as exists here. In that case suit was simply one for possession based on nonpayment of rent, whereas here, the landlord argues, because of the contractual notice-of-termination clause, the lease terminated prior even to institution of suit. For four reasons, I reject the landlord's argument.

First, for its holding concerning the amount due, the *Trans-Lux* opinion itself relies on "the rule ... that interest is allowed on *contracts* to pay money from the date the debt becomes due" and on the fact that the *Trans-Lux* "lease called for payment of specified sums of rent at specified dates." 54 A.2d at 147 (emphasis added). Thus, in *Trans-Lux* just a much as here, the tenant had breached a *contractual* lease provision for payment of rent, and it was that breach of contract which, whether immediately (in *Trans-Lux* ) or after expiration of a 15-day notice period (in this case), gave rise to the landlord's right to sue for possession. Moreover, as noted earlier in this opinion, *Trans-Lux*'s very *ratio decidendi* is "that the provision of the lease giving the landlord the right to repossess for nonpayment of rent is in substance merely security for payment of rent, and that upon payment of the arrears, interest and costs, the landlord has complete compensation and has no need to resort to his security." *Id.* at 147. The existence or non-existence of a notice-of-termination clause is utterly irrelevant to that *ratio decidendi*.

Second, none of the cases draws or even hints at the distinction argued by the landlord. Indeed, *Molyneaux* involved a lease termination clause virtually identical to that in this case. The *Molyneaux* court cited in support of its decision, and repeated almost verbatim, *Trans-Lux*'s language that a court may relieve a tenant "from forfeiture of ... [his] lease for nonpayment of rent by permitting him before or after judgment to pay the rent due." 195 A.2d at 746. The result in *Molyneaux* was the same as in *Trans-Lux*, and the *Molyneaux* opinion is devoid of any indication that the presence or absence of a notice-of-termination clause had or could have any bearing at all on the *Trans-Lux* right to redeem.

Third, the notice-of-termination clause as applied in this case was simply declarative of and indeed may have imposed some restriction on the right that would otherwise exist to evict for nonpayment of rent. It would be strange to hold that, on the facts of this case, a landlord has an enhanced right to evict because of the existence of a clause which adds nothing to and may subtract from the landlord's substantive rights.

Fourth, the right of eviction essentially relates to the real property relationship rather than to the contractual relationship between landlord and tenant. The reliance by the landlord in this case on the contractual nature of the notice-of-termination clause is misplaced because the remedy that the landlord seeks is not the contractual remedy of money damages, but rather termination of the real property relationship through eviction. *See Cohen v. Food Town, Inc.,* 207 A.2d 122, 124 (D.C.1965) ("A lease is not an ordinary bilateral contract. It is primarily a conveyance of an estate for years in real estate ..." (footnote omitted)). *See also Interstate Restaurants, Inc. v. Halsa Corp.,* 309 A.2d 108 (D.C.1973).

Counsel for the landlord in this case has also cited the case of *National Capital Housing Authority v. Douglas,* 333 A.2d 55 (D.C.1975). However, that case certainly does not undercut the theory of *Trans-Lux*. Indeed, the D.C. Court of Appeals in

*Douglas* quoted with approval the very same passage from the *Trans-Lux* decision that is quoted at the outset of this opinion. The holding of the Court in *Douglas* was simply that the Landlord-Tenant Court could not stay execution and defer the tenant's obligation to pay the full amount due of rental arrears for an extended, two-year period. The *Douglas* Court stated that:

> The rule in this jurisdiction—as reaffirmed in the *Trans-Lux* case—is that all accrued past rent must be unconditionally tendered before any stay of execution can issue.

*Id.* at 56–57. Thus, under local District of Columbia law the tender must be made in full prior to the time of execution.

■ At this point we come to the question of the interaction between the federal Bankruptcy Code and the local law. That interaction may be summarized as follows: Typically, local law may grant a right to redeem but requires immediate payment in full before some event—before "execution is executed," in the District of Columbia—in order for a tenant to exercise that right. Bankruptcy law accepts the rule of local law as to what event will terminate the right to redeem; but, if the bankruptcy petition is filed before that terminating event occurs, bankruptcy law superimposes upon local law an additional grace period within which the right to redeem may be exercised, *cf.* 11 U.S.C. § 362(a)(3) (acts to obtain possession of property of the estate are stayed), and eliminates the requirement of full payment in one lump sum.

The cases are legion in this Court and other bankruptcy courts across the country where this has occurred in the context of mortgage foreclosures. Before commencing foreclosure proceedings, the mortgagee normally invokes the acceleration clause. Hence, under local law, the mortgagor's right to redeem can be exercised *only* by tendering payment in full of the entire mortgage obligation before the foreclosure process has been completed. But, if the mortgagor files a Chapter 11 or Chapter 13 bankruptcy petition before the right to redeem has expired under local law, that

mortgagor need not tender full payment immediately. Instead, under 11 U.S.C. §§ 1124(2) or 1322(b)(3) or (5), he may "de-accelerate" and reinstate the original mortgage terms. That is, he may cure arrears over an extended period of time and may resume regular monthly payments for the remaining original term of the mortgage. *See generally* Annot., 67 A.L.R.Fed. 217 (1984) (de-acceleration under Chapter 13). At least three United States Courts of Appeals have so held.

In *In re Madison Hotel Assocs.*, 749 F.2d 410, 12 B.C.D. 616 (7th Cir.1984), the Seventh Circuit reviewed numerous cases and concluded:

> The point to be gleaned from the relevant case law is that a creditor, holding a final judgment of foreclosure, is not impaired under section 1124(2) [of the Bankruptcy Code] if the debtor's plan of reorganization cures the default of the accelerated loan before the foreclosure sale actually occurs or before the judgment merges into the mortgage under state law, thereby transferring title to the mortgagee. In *In re Clark*, 738 F.2d 869 (7th Cir.1984), this court held in an analogous Chapter 13 situation, where the bank had obtained a judgment of foreclosure on the debtor's farm, that "the power to 'cure' a default provided by [11 U.S.C.] § 1322(b)(5) permits a debtor to de-accelerate the payments under a note secured by a residential property mortgage." 738 F.2d at 874 [citations omitted]. We reasoned that the existence of a foreclosure judgment did not alter the result because "in Wisconsin a judgment of foreclosure does nothing but judicially confirm the acceleration." *In re Clark*, 738 F.2d at 874. In the present case, Prudential has simply obtained an *order* of foreclosure under Wisconsin law that has not been reduced to final judgment....
>
> We add that even if Prudential had obtained a judgment of foreclosure, that would not alter our analysis because "[u]nder Wisconsin law, a mortgagee has only a lien on the mortgaged property

*even after a judgment of foreclosure is entered." Id.* at 871 (emphasis added). 749 F.2d at 422.

In *Grubbs v. Houston First American Sav. Ass'n,* the Fifth Circuit, *en banc,* held that a debtor could "pay off in installments during the term of the [Chapter 13] plan past-due amounts on a promissory note (secured by a lien on the debtor's principal residence) that was properly accelerated and became fully due under state law prior to the filing of the debtor's Chapter 13 petition." 730 F.2d 236, 237, 11 B.C.D. 1081 (5th Cir.1984) (en banc).

The *Grubbs* decision quoted extensively from the opinion written by Judge Lumbard for a unanimous Second Circuit panel in *In re Taddeo,* 685 F.2d 24, 9 B.C.D. 556 (2d Cir.1982). The Court noted in *Grubbs* that:

> In construing § 1322(b), *Taddeo* rejected a contention similar to that raised by the present mortgage creditor that state law must determine the effect of the creditor's acceleration and the ability of a debtor to cure his default. 685 F.2d at 28–29. It found that, in enacting § 1322(b), Congress had intended to permit cure in bankruptcy proceedings as authorized by the federal code. *Id.*

730 F.2d at 241 (footnote omitted). And the *Grubbs* court added:

> Along with the *Taddeo* panel, [we] do not believe that Congress labored for five years over this controversial question

only to remit consumer debtors—intended to be primary beneficiaries of the new Code—to the harsher mercies of state law. 685 F.2d at 25.

*Id.* at 242 n. 9.

The same result is reached in the context of leasehold interests as in the context of mortgages. Local law determines when the right to redeem the leasehold interest expires. But if the tenant files a bankruptcy petition before the right to redeem has expired under local law, then the tenant need not tender full payment immediately. Instead, if, "at any time before the confirmation of a plan,"[5] he "cures, or provides adequate assurance that [he] will promptly cure" any default,[6] and if he at that time "provides adequate assurance of future performance under such ... lease,"[7] then he may reinstate the lease, resuming regular monthly lease payments for the remaining original term of the lease.

The tenant's right to redeem a leasehold interest even after judgment for possession has been rendered, and until "execution is executed" under local law in the District of Columbia, is fully analogous to a mortgagor's right to redeem a fee simple interest, under Wisconsin law, even after a judgment of foreclosure has been rendered but before the actual foreclosure sale. *See Madison, supra,* 749 F.2d 410. It is fully analogous to a mortgagor's right to redeem a fee simple estate, under Florida law, even after a foreclosure judgment and

**5.** 11 U.S.C. § 365(d)(2) (unamended), applies to cases like this one, which were filed before October 8, 1984, the effective date of the 1984 Bankruptcy Amendments. The 1984 Amendments include a provision requiring the trustee or debtor to cure or provide adequate assurance that he will promptly cure any default in a non-residential real estate lease "within 60 days after [a voluntary petition is filed] or within such additional time as the Court, for cause, within such 60-day period, fixes...." 11 U.S.C. § 365(d)(4) (amended).

The 1984 Amendments also include a provision prohibiting cure of defaults and reinstatement of a non-residential real property lease if the lease "has been terminated under applicable non-bankruptcy law prior to" the filing of a voluntary bankruptcy petition. 11 U.S.C. § 365(c)(3) (amended). That amendment ap-

plies only to cases filed after October 8, 1984, and hence does not apply to this case. Nevertheless, most authorities believe that this new language is merely declarative of pre-existing law, as construed by most bankruptcy courts, including this one. Although the question is of course not now before me, I do not believe that this linguistic change would affect the result in a case such as this. I construe the quoted language to refer to the entire body of applicable non-bankruptcy law, including (in the District of Columbia) the right to redeem at any time before execution is executed. In other words, I construe the word "terminated" to mean "finally and irredeemably terminated."

**6.** 11 U.S.C. § 365(b)(1)(A).

**7.** 11 U.S.C. § 365(b)(1)(C).

foreclosure sale but before title has passed to the foreclosure purchaser by the Court Clerk's filing of a "certificate of title," *see In re Chambers,* 27 B.R. 687, 10 B.C.D. 382 (Bankr.S.D.Fla.1983), or, under Missouri law, even after a non-judicial foreclosure sale but within a one-year statutory redemption period, *see In re Taylor,* 21 B.R. 179, 9 B.C.D. 399 (Bankr.W.D.Mo.1982), or, under Illinois law, even after a mortgage has merged into a final foreclosure judgment and after a judicial foreclosure sale but within a six-month statutory redemption period. *See In re Kokkinis,* 22 B.R. 353, 9 B.C.D. 382 (Bankr.N.D.Ill.1982).

In *In re Butler,* 14 B.R. 532 (S.D.N.Y. 1981), "a final judgment" had been rendered in state court against the tenant/debtor, with a provision for stay of eviction until a date which was some two months before the debtor filed his Chapter 13 bankruptcy petition. However, the actual warrant of eviction was not issued by the state court until shortly after the debtor filed the bankruptcy petition. But "[u]nder applicable New York law, a lease is not extinguished unless and until the issuance of a warrant of eviction by the state court." *Id.* at 534. Therefore, the district court held that the automatic stay under 11 U.S.C. § 362(a) rendered the post-petition warrant of eviction legally ineffective, and that under 11 U.S.C. § 365 the debtor could remain on the premises, "so long as current rent is timely paid" and so long as he cured the default by paying off the back rent "within such time as [the bankruptcy court] may find to be a reasonable time." *Id.* at 534, 535–36.

■ District of Columbia law is even more favorable to tenants than New York law. Here, the event which finally extinguishes a tenant's leasehold interest is not simply the post-judgment *issuance* of a possessory writ, but *execution* of such a writ. Hence, in this case, since the tenant remained in possession, and since no possessory writ had been executed when the bankruptcy case was filed, the tenant's right to redeem was "property of the estate" within the meaning of 11 U.S.C.

§ 541(a)(1). That is, it was an "equitable" interest "of the debtor in property as of the commencement of the case."

In this case, the debtor-tenant has filed its Chapter 11 plan. That plan calls for the tenant's proposed assignee to cure the default in pre-petition rent immediately upon the effective date of the plan. (Post-petition payments are already fully up to date.) The tenant's proposal is in full compliance with 11 U.S.C. § 365. Hence, the landlord's motion for relief from the stay so as to execute on its judgment for possession by obtaining issuance and execution of a writ of restitution must be denied.

Before concluding, I feel constrained to discuss two prior opinions of this Court which may seem to be at odds with my holding (1) that local law permits a leasehold forfeiture to be redeemed and the leasehold interest reinstated at any time until "execution is executed," by paying the full amount of rental arrears, and (2) that bankruptcy law enhances this local law right, first by automatically staying its enforcement for a period of time within the sound discretion of the bankruptcy court, and second by permitting the rental arrears to be paid, not in full immediately, as required by local law, but within such time as the bankruptcy court may find to be a reasonable time. Those two prior opinions are *In re Aries Enterprises, Ltd.,* 3 B.R. 472, 6 B.C.D. 280 (Bankr.D.D.C.1980), and *In re Chuck Wagon Bar-b-que, Inc.,* 7 B.R. 92 (Bankr.D.D.C.1980). In both cases this Court held adversely to the interests of the tenants.

In *Aries,* however, the debtor's business had been closed by a tax levy a month before the debtor filed its bankruptcy petition. Hence, the debtor was not "in possession." The *Trans-Lux* doctrine applies, as the court in *Trans-Lux* itself explicitly stated, only "so long as [the tenant] is in possession." 54 A.2d at 146. In addition, this Court noted in *Aries* that the premises were in extremely poor condition, that substantial expense would have to be incurred in order to restore the premises to a functioning business status, that the debtor had

no liquid assets, and that there was no plausible basis for the injection of new operating capital or for the sale of the business. 3 B.R. at 474–75. Thus, in that case there was no reasonable basis for believing that the tenant would be financially able to redeem the lease or that, if the lease were redeemed, the tenant could do anything further with the premises. Finally, in *Aries,* this Court properly relied on *"the undisputed fact* that the lease terminated prior to the filing of the Chapter 11 [case] and, therefore, the curative provisions of [11 U.S.C. §] 365 would not be applicable or available to the debtor." *Id.* at 475 (emphasis added).

Similarly, in *Chuck Wagon,* this Court held that the tenant's reliance on *Trans-Lux* was "misplaced because such a right [to redeem] only exists where there is an underlying leasehold interest to protect and *where the landlord's action has been instituted for the non-payment of rent."* 7 B.R. at 94 (emphasis added). This Court specifically found:

> There is no satisfactory evidence that the defendant, Chuck Wagon Bar-B-Que, at any time, could comply with the specific lease requirements dealing with a certified statement of gross monthly sales.

*Id.* This Court held:

> [T]he leasehold interest was properly forfeited by reason of the existing default and subsequent, timely notice by the landlord. Clearly, the landlord had a right to terminate the lease in connection with the persistent defaults, and, further, *because of the defendant's failure to comply with specified conditions of the lease,* and proper notice of default was given in connection with the termination of such lease.

*Id.* at 94–95 (emphasis added). Finally, this Court concluded:

> While it is true that courts are loath to recognize forfeiture, particularly in the context of a viable Chapter 11 reorganization case, where the landlord has taken the proper steps to terminate the lease and *where there are no equitable factors to warrant a redemption of the*

*tenant's rights,* termination would appear to be entirely proper.

*Id.* at 95 (emphasis added).

Thus, it clearly appears that in *Chuck Wagon,* this Court recognized the *Trans-Lux* doctrine but held it inapplicable in that case because: (1) the tenant's defaults included not only "nonpayment of rent" (and *Trans-Lux's* specific language covers only "nonpayment of rent," *see* 54 A.2d at 146), but also included a non-monetary default (failure to comply with the specific lease requirement to provide a certified statement of gross monthly sales) which this Court specifically found could not "at any time" be cured; and (2) there were "no equitable factors to warrant a redemption of the tenant's rights," 7 B.R. at 95, because "there is no credible evidence of record to establish that the defendant and debtor-in-possession could in any way liquidate the outstanding rental arrears" and "no evidence in the context of this Chapter 11 case that the landlord can receive 'adequate protection.'" *Id.* at 94.

In the instant case, by contrast, there was no default other than nonpayment of rent, the rental arrears can and will be fully cured promptly if the debtor's plan is confirmed, and meanwhile the landlord can and will receive adequate protection.

■ As an alternative ground for decision in this matter I hold that the landlord's contention that the judgment for possession was final is erroneous. Since the tenant's motion to vacate the default judgment was pending when the bankruptcy petition was filed, the decision of the Landlord-Tenant Court has remained in abeyance since the bankruptcy filing and hence never became final. 11 U.S.C. § 362(a)(1); *Ellison v. Northwest Engineering Co.,* 707 F.2d 1310 (11th Cir.1983). Therefore, there is no final judicial determination that the lease was validly terminated. If I am in error in holding that, under *Trans-Lux,* the right to redeem survives even a final judgment for possession, then the tenant would still be free to resume the litigation in Landlord-Tenant Court and seek a ruling that the landlord's purported lease termi-

nation was invalid or should equitably be set at naught; and I would deny the landlord's motion for relief from the stay except to the extent of permitting that litigation to proceed to final judgment (but not execution), provided the tenant meanwhile continues to tender when due each month's "administrative rent."

For all the foregoing reasons this Court has issued its order denying the landlord's motion for relief from the automatic stay.