**In re TED LIU'S SZECHUAN GARDEN, INC., Debtor.**

**Bankruptcy No. 84–00538.**

United States Bankruptcy Court,
District of Columbia.

May 24, 1985.

Donald T. Cheatham, Washington, D.C., for debtor.

Rebecca J. Halbert, Washington, D.C., for landlord.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

Before the Court is a motion by the Debtor's Landlord for relief from the auto-matic stay of 11 U.S.C. § 362, so as to permit the Landlord to continue eviction proceedings instituted before the Debtor filed its Chapter 11 bankruptcy petition. The original lease term was for fifteen years, from March 15, 1981 through March 31, 1996, with a ten-year renewal option, to March 31, 2006. The Debtor defaulted in payment of rent due for September 1983, and the Landlord sent a "notice of termination of lease and notice to quit premises," and (upon expiration of the notice period) commenced eviction proceedings against the Debtor, resulting in entry of a consent judgment for possession with a brief stay of execution, which was to expire in March 1984. However, the Landlord took no steps to evict between March and October 1984. When the Landlord did commence eviction proceedings, the Debtor first unsuccessfully sought to have the consent judgment set aside and then, on November 14, 1984, filed its Chapter 11 bankruptcy petition, shortly after a writ of restitution (for possession) was filed but before it was executed.

At the hearing on the Landlord's lift-stay motion, this Court ordered the Debtor to resume regular payments, from the December 20, 1984 date of that hearing, at the same $2,000-per-week rate specified in the consent judgment entered in Landlord-Tenant Court.[1] This Court took

---

1. This rate was less than the amount specified in the original written lease, but the Debtor's president testified that the lease had been orally modified by agreement of the parties to the amount later set out in the consent judgment. Having viewed this witness's demeanor, and in the absence of any contrary evidence apart from the lease itself, I found this testimony to be credible.

In a post-hearing memorandum, the Landlord has asserted (a) that the rent reduction was *not* agreed to, and moreover (b) that (i) the Landlord-Tenant Court specifically found that the rent reduction was not agreed to and that (ii) such finding by that Court is binding on this Court pursuant to the doctrine of collateral estoppel. For purposes of this lift-stay proceeding, this Court need not make a final determination as to whether the rent reduction was agreed to on a permanent basis. As stated in S.Rep. No. 989, 95th Cong., 2d Sess. 55 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787, a lift-stay proceeding is to be handled "in … summary fashion." This Court has decided only what amount of periodic payments is required in order to provide "adequate protection" to the Landlord for the tenant's use and occupancy of the demised premises during an interim period while this case remains pending.

The Landlord's collateral estoppel argument is unpersuasive for two reasons. First, the Landlord-Tenant Court's finding was an oral ruling from the bench that was never reduced to the form of a final written order and hence never became effective as a final judgment entitled to preclusive effect. SCR Civ.Rule 58. Second, the Landlord-Tenant Court found *only* that in September 1984 the parties agreed "to continue to negotiate" concerning the terms of a possible new lease, including "the specific [amount of] rent." But what is at issue in this lift-stay proceeding is not whether the parties agreed on the amount of rent payable under a possible *new* lease, but whether they agreed on the amount of

under advisement the question whether, as the Landlord contended, the lease had irredeemably terminated upon expiration of the period specified in the notice of termination. The Court also has considered whether the lease irredeemably terminated (i) upon entry of the consent judgment, or (ii) upon expiration of the stay period specified in that judgment, or (iii) upon issuance of the writ of restitution.

Resolution of this issue is governed by this Court's recent decision in *In re D.C. Diamond Head, Inc.*, 51 B.R. 309 (Bankr.D.D.C.1985).[2] As this Court explained at some length in that opinion, local law in the District of Columbia grants a right of redemption of a terminated lease, and that right of redemption does not expire until "execution is executed." *Trans-Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144, 146 (D.C.1947); *see also Davis v. Rental Associates, Inc.*, 456 A.2d 820 (D.C.1983) (en banc); *Burrows Motor Co., Inc. v. Davis*, 76 A.2d 163 (D.C. 1950). In the instant case, a writ of execution had been issued, but, when the Debtor filed its Chapter 11 bankruptcy petition, that writ had not yet been executed by actual eviction by the United States Marshal's Office. Hence, the Debtor still retained the right to redeem its leasehold interest.[3]

It is true of course that *Trans-Lux* requires the tenant to tender unconditionally the full amount of rent due, with interest and costs, in one lump sum, in order to exercise this right of redemption. *National Capital Housing Authority v. Douglas*, 333 A.2d 55 (D.C.1975). But as this Court also explained at length in *D.C. Diamond Head*, "bankruptcy law superimposes upon local law an additional grace period within which the right to redeem may be exercised ..., and eliminates the requirement of full payment in one lump sum." At 314. Specifically, as to cases filed before October 8, 1984, a debtor may, "at any time before the confirmation of a plan," elect to "assume" an "unexpired lease" by "cur[ing], or provid[ing] adequate assurance that [it] will promptly cure," any default in the lease. 11 U.S.C. § 365(d)(2).

However, under the 1984 Amendments to the Bankruptcy Code, in cases filed after October 8, 1984 (like this case), the election must be made, as to an unexpired lease of nonresidential real property (like the lease at issue here), not "at any time before the confirmation of a plan," but within 60 days after the Debtor's voluntary petition was filed, "or within such additional time as the

---

rent payable during an interim period of continued occupancy under the pre-existing lease. According to the credible and unrebutted testimony of the Debtor's principal, the Landlord agreed to make an interim rent concession because of a prior similar concession made to another tenant and because of the fact that continued construction work and other activities by the Landlord interfered to some extent with the Debtor's right of quiet and peaceable enjoyment of the premises and the Debtor's right of unimpeded public access to the premises. This testimony is supported by the fact that the Landlord took no steps to evict for nearly half a year after expiration of the period specified in the consent judgment. The Landlord began eviction proceedings *only* when the tenant defaulted in the $2,000-per-week payments. This fact provides powerful support to the tenant's contention that the Landlord did indeed agree to an interim rent reduction extending beyond the date specified in the consent judgment.

2. In so holding I now expressly decide the issue referred to in footnote 5 of the *D.C. Diamond Head* opinion, and hold that the language added

to 11 U.S.C. § 365(c)(3) by the 1984 Amendments to the Bankruptcy Code was merely declarative of pre-existing law and does not require a different result in this case from the result reached in *D.C. Diamond Head.*

In view of this decision, I need not consider the other defenses raised by the Debtor to the Landlord's lift-stay motion, such as the claim that the notice of termination was inadequate. (Candor compels me to add that my preliminary review of those other defenses leaves me unimpressed.)

3. The lease contains a waiver-of-redemption clause which, however, applies only "in case Tenant shall be dispossessed ... or in case Landlord shall obtain possession of the Leased Premises...." In this case, the Debtor has remained in possession. Therefore, this Court need not now decide whether a waiver-of-redemption clause extensive enough to apply to the facts of this case would be valid under local law or enforceable against a debtor in bankruptcy.

court, for cause, within such 60-day period, fixes." 11 U.S.C. § 365(d)(4). This is potentially a significant shortening of the period allowed under prior law.

■ However, in this case the 60-day period had not yet run when this Court took under advisement the question whether or not there was an unexpired lease which could be assumed; only 36 days had elapsed. At all times it has been apparent to both Landlord and Debtor in this case that the Debtor desired to exercise both the right to redeem and the right to assume the lease.[4] But the right to assume could not be exercised until the right to redeem was established; establishment of the right to redeem was thus a precondition before the right to assume could be exercised. The right to redeem has now been established by this Opinion. Thus, the running of the 60-day period for exercising the right to assume (or obtaining an extension of time to exercise that right) should be tolled during the time that the matter of the right to redeem has remained under advisement by this Court. *See United States v. Louisiana,* 123 U.S. 32, 37, 8 S.Ct. 17, 19, 31 L.Ed. 69 (1887), holding that limitations did not bar an action by a State in the Court of Claims where the statute at issue required the Secretary of the Interior to "prepare a list of" previously unsold federally-owned swamp lands so that those lands could be transferred by the United States to certain States in which the lands were located, and the Secretary failed to prepare the list: "... although the State could not be deprived of her rights by the inaction of that officer, ... she was not obliged to proceed in their assertion in the absence of such identification." *See generally* 51 Am.Jur.2d Limitation of Actions § 140 (1970):

The broad rule is laid down that whenever some paramount authority prevents a person from exercising his legal remedy, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right even though the statute makes no specific exception in his favor in such cases.

By analogy to these authorities concerning tolling of limitations periods,[5] and in view of the Debtor's reliance in the form of weekly adequate-protection payments to the Landlord pursuant to this Court's unappealed Order, this Court will exercise its powers as a court of equity and will deem that the running of the Debtor's 60-day period to exercise (or to extend) the right to assume has been tolled during the time that the matter of the existence *vel non* of a right to redeem has remained under advisement. Therefore, the Debtor now has the remainder of the 60-day period, *i.e.,* until 24 days after entry of this Opinion and Order, within which either to assume the lease or else to seek and obtain an order extending the Debtor's time to assume or reject the lease. As soon as the Debtor assumes the lease, it must comply with the requirement of "cur[ing], or provid[ing] adequate assurance that it will promptly cure," any and all defaults in the lease. 11 U.S.C. § 365(b)(1)(A).

■ The 1984 Amendments to the Bankruptcy Code added another new provision, 11 U.S.C. § 365(d)(3). That provision requires a debtor to "timely perform" all post-petition obligations under any unexpired lease of nonresidential real property. The same subsection goes on to provide:

The Court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the [commencement of a voluntary case], but the time for perform-

---

4. Indeed, at the hearing in December 1984, the Debtor's attorney stated, and both witnesses for the Debtor testified, that these particular premises are essential to the Debtor's reorganization; in addition, the Debtor's president testified that the Debtor expected to be able to cure all defaults through a hoped-for SBA loan.

5. I recognize that the analogy is not perfect. In all probability, this Court's taking the question of the right to redeem under advisement did not positively *prevent* the Debtor from seeking an extension of time within which to assume or reject. Nevertheless, the Debtor may well have been lulled into inaction by what the Court did.

ance shall not be extended beyond such 60-day period.

In this case, neither party brought this particular new statutory provision to this Court's attention, and this Court's Order following the December 20, 1984 hearing failed to take this new provision of law fully into account. Specifically that Order required resumption of $2,000-per-week payments as of December 20, 1984 (the date of the hearing), rather than as of November 14, 1984 (the date the petition was filed). That unappealed Order is now the law of this case with respect to the Debtor's interim post-petition rental obligations. It is binding upon the Landlord notwithstanding the Order's unintended variance from the statute. Nevertheless, now that the Court has discovered the problem, this Court believes that the Debtor should be required to comply reasonably promptly with the statutory mandate.

NOW THEREFORE IT IS ORDERED, on May 24, 1985, that the Debtor shall have until 24 days after entry of this Opinion and Order within which either to assume or reject the lease at issue in this case or else to seek and obtain an order extending the Debtor's time to assume or reject that lease; and it is further

ORDERED that the Debtor shall have until 24 days after entry of this Opinion and Order within which to pay or tender to the Landlord the sum of $10,000 in order to cure the default arising during the five-week period between November 14, 1984 and December 20, 1984.