**In re CLUB 99, INC. t/a Valentino's.**

Bankruptcy No. 86–435.

Civ. A. No. 87–1305–OG.

United States District Court,
District of Columbia.

Jan. 4, 1988.

Paul M. Thomas, Richard A. Samp, Washington, D.C., for appellant.

Janet M. Nesse, Washington, D.C., for appellee.

MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

This case involves the Bankruptcy Court's approval of the assumption and assignment of a lease of commercial real estate. The commercial property in question is located on the street level at 1214 Eighteenth Street, N.W., Washington, D.C., and is inhabited by a strip-joint known as Valentino's. The landlord, Robert Kling appeals the order of the Bankruptcy Court, putting forth three issues for this Court to consider. First, the appellant argues that the lease had been terminated in accordance with nonbankruptcy law prior to the filing of the bankruptcy petition. For that reason, the appellant asserts that according to section 365(c)(3) of the Bankruptcy Code, it could not be assumed and assigned by the debtor, Club 99, Inc. Second, the landlord argues that the Bankruptcy Court erred in ruling that the lease was property of the bankruptcy estate and subject to assignment by Club 99, Inc., because the debtor was not a party to the lease. Third, the appellant argues that Club 99, Inc. rejected the lease as a matter of law by failing to assume it within the time period prescribed by section 365(d)(4) of the Bankruptcy Code.

Because the Court finds that the lease had been terminated under District of Columbia law prior to the filing of the debtor's bankruptcy petition, the Court holds that the finding of the Bankruptcy Court to the contrary was clearly erroneous.[1] Accordingly, the order issued by the Bankruptcy Court on April 23, 1987, which permitted the debtor to assume the lease and assign it to a third party, is hereby vacated. The matter will be remanded to the Bankruptcy Court for further proceedings in accordance with this opinion.

## II. BACKGROUND

### A. *Facts*

On February 1, 1978, Haitham Shurbaji, who at that time was President of Club 99,

---

1. Having found that the lease was terminated, the Court will not address the issues raised by the appellant concerning whether the lease was property of the estate and whether assumption of the lease was timely.

Inc., signed a lease for the first floor of 1214 18th Street, N.W., Washington, D.C. The landlord at that time was the appellant's predecessor-in-interest. Unless sooner terminated, the lease was to run until August 31, 1990. The lease provides that Mr. Shurbaji may not use or permit the property to be used for disorderly or unlawful purposes or for any illegal business. The lease also contains a forfeiture clause, which provides:

> [I]f Lessee fails or neglects to keep, perform and observe each and every of the covenants, conditions, and agreements herein contained and on his part to be kept, performed, and observed ... then, and in each and every instance there shall arise and exist a conclusive presumption of a "failure" or "default" by Lessee within the meaning of the lease, and *Lessor may at his option, any time thereafter, terminate this lease,* whereupon Lessee's right of possession shall cease and Lessor shall be entitled to the possession of said leased premises and to enter same without notice[,] demand of rent or demand of possession of said premises and Lessor may forthwith proceed to recover possession of said leased premises by summary proceedings under the laws in force in the District of Columbia relating to landlord and tenant....

Lease at ¶ 14 (emphasis added).

The landlord filed suit for possession against Haitham Shurbaji and Club 99, Inc. in the Superior Court of the District of Columbia on March 28, 1985. The appellant has been moved as the substitute plaintiff in that case, which is still pending in Superior Court. The landlord-tenant complaint asserts that the tenant breached the lease by using the premises for disorderly and/or unlawful purposes. Any monetary breaches that were alleged at the outset of the landlord-tenant case have long been cured.

After the suit for possession was filed, and before the debtor filed its bankruptcy petition, Club 99, Inc. lost its liquor license. The appellant cites the findings of the District of Columbia Alcohol Beverage Control Board and that Board's decision to deny the debtor's application for renewal of its liquor license as evidence of the many non-monetary breaches of the lease. In its May 28, 1986, decision, which is part of the record in this case, the ABC Board concluded that employees of Club 99, Inc. were selling cocaine and marijuana. The execution of a search warrant in 1984 had revealed the presence of drug paraphernalia in the office of the strip-joint. The Board also concluded that Club 99, Inc. had violated D.C.Code § 25–118(a) by permitting the premises to be used for unlawful, disorderly or immoral purposes.

Additionally, the Board found that Club 99, Inc. had encouraged its dancers by paying them commissions to solicit patrons to buy drinks, in violation of a municipal regulation, D.C.Mun.Regs. tit. 23, § 504. Two other violations cited by the Board were the failure to demonstrate an intent to serve meals and the awareness of the Club's manager that the dancers had sexual contact with patrons. Despite the revocation of Club 99's liquor license, it continued to serve alcoholic drinks for over two months, until the police searched the premises and seized all the liquor on August 14, 1986.

B. *Proceedings Below*

Club 99, Inc. filed its petition in bankruptcy under Chapter 11 on June 19, 1986, prior to the resolution of the landlord's suit for possession. On August 1, 1987, the debtor filed a motion with the Bankruptcy Court for permission to assume the lease in question or for an extension of time within which to assume it. The Bankruptcy Court extended the time and set a hearing for October 16, 1986. The landlord sought the Bankruptcy Court's permission to proceed with his Landlord–Tenant Court case on August 11, 1986, by filing a motion to modify the stay of bankruptcy or to declaratory judgment to the effect that the lease was not part of Club 99's bankruptcy estate. Additionally, the appellant filed an opposition to the debtor's application to assume the lease on grounds that the lease was terminated and that the debtor was not a party to the lease.

On October 16, 1986, the Bankruptcy Court held a hearing in this matter. There-

after, it entered an order on December 16, 1986, which held that the debtor-in-possession had an interest in the lease, although it was not the named lessee. The Court also modified the stay of bankruptcy in order to allow the landlord-tenant case to go forward in January of 1987, stating that "further determinations regarding this lease should be made by the Landlord–Tenant Court of the District of Columbia." The Bankruptcy Court continued the debtor's motion to assume the lease until such time as the debtor filed a motion to assign it, but would not allow the debtor to assume it. Neither party appealed the order of December 16, 1986.

The January 1987 landlord-tenant hearing was rescheduled by the Clerk of the Superior Court to a date in May of 1987. On January 30, 1987, the debtor filed a Notice of Intention to Sell the lease and other assets of the estate to Colin Jupp for $250,000. Haitham Shurbaji was to receive $10,000 of the proceeds in exchange for a release of any rights he might have under the lease. A hearing on the sale was held on February 11, 1987, but due to the absence of Colin Jupp, it was continued until February 27, 1987, for his testimony. Because Mr. Jupp was unavailable in February, the hearing was postponed again until April 1, 1987.

The Court below held on October 16, 1986, that it would be inequitable to permit the debtor to assume the lease for its own purposes, finding that there had been numerous violations of criminal law on the premises and other nonmonetary breaches by Mr. Shurbaji. Notwithstanding those findings, on April 1, 1987, the Bankruptcy Court allowed Colin Jupp, an assignee proposed by the debtor, to assume the lease. On April 23, 1987, the Bankruptcy Court issued an order stating that Club 99 could assume the lease and assign it to Colin Jupp. The landlord appeals from that order.

## III. DISCUSSION

### A. *Mootness*

Extensive arguments are made by Club 99, Inc., that this appeal is moot because appellant failed to take an appeal from the earlier rulings of the Bankruptcy Court and to obtain a stay of the sale of the lease. The debtor relies on section 363 of the Bankruptcy Code, which requires an appellant to seek a stay of the sale of property prior to an appeal of an order approving the sale. The debtor's reliance on section 363 is misplaced. Section 363 pertains to the use, sale or lease of property of a bankruptcy estate.

The section of the Bankruptcy Code that applies in this case is section 365, entitled "Executory contracts and unexpired leases," which covers the assumption and assignment of leases that are part of the bankruptcy estate. Congress did not require an appeal to be taken on a section 365 ruling until a final order has been entered. In this case, the order from which the landlord appeals was entered on April 23, 1987. Indeed, the order is entitled "Order Authorizing Assumption and Assignment of Lease." The Court finds that the April 23, 1987 order was final. Accordingly, the Court holds that the appeal taken from the order of April 23, 1987, which permitted the assumption and assignment of the lease, is not moot or untimely, because the appellant was not required to appeal an earlier order nor to obtain a stay of the sale of the bankruptcy property.

### B. *Termination of the Lease*

The landlord argues that the Bankruptcy Court's action was clearly erroneous because section 365(c)(3) prohibits the assumption and assignment of a lease that has been terminated under the applicable local law. Section 365(c)(3) provides that the trustee or debtor-in-possession may not assume or assign "an unexpired lease of the debtor, whether or not such ... lease prohibits or restricts assignment of rights or delegation of duties if ... such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3). This section applies

to the case at hand because the lease in question is one of commercial, nonresidential real estate.

The issue before the Court is whether the Bankruptcy Court's ruling that no pre-bankruptcy termination had occurred is clearly erroneous. The Bankruptcy Court based its decision on District of Columbia case law that provides tenants with a right to redeem a lease before forfeiture occurs. *Trans–Lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (D.C.1947). The *Trans–Lux* Court stated: "[A] court of law or equity may relieve a tenant from forfeiture of his lease for nonpayment of rent by permitting him before or after judgment, so long as he is in possession, i.e., before 'execution is executed,' to pay the rent due, with interest and costs." *Id.* at 146. According to the line of cases following *Trans–Lux*, redemption may occur by curing monetary defaults even after the landlord has notified the tenant of the termination based on lease defaults and even after the landlord-tenant court has granted judgment for possession to the landlord. The right to redeem, however, applies to tenants who have been terminated for nonpayment of rent.

 According to the District of Columbia Court of Appeals, the right to redeem a lease prior to forfeiture is inapplicable in cases where breaches of the lease covenants other than the covenant to pay rent have occurred. *Frog, Inc. v. Dutch Inns of America*, 488 A.2d 925, 931 (D.C.1985). The D.C. Court of Appeals stated: "[W]hen the breach, as in the present case, is not of the duty to pay rent but rather of an obligation collateral to it, such as the duty to operate a restaurant in accordance with the lease ... equity will not generally relieve the tenant from forfeiture." *Id.* In this case, the breaches of the lease were not related to the covenant to pay rent. They were instead breaches of the covenant that prohibited using or permitting the premises to be used for unlawful or disorderly purposes. Evidence of the unlawful and disorderly uses to which the debtor put the premises is clearly borne out in the findings of the Alcohol Beverage Control Board, and has not been disputed by the debtor. Instead, the debtor contends that the nonmonetary defaults have been cured. But according to District of Columbia law, the debtor had no right to redeem the lease or to cure its nonmonetary defaults prior to forfeiture. Accordingly, the Court holds that the Bankruptcy Court erred in ruling that at the time its petition in bankruptcy was filed, Club 99, Inc. had a right to redeem or cure its nonmonetary defaults prior to forfeiture.

The District of Columbia Court of Appeals has held that a lease is terminated when (1) the tenant is in breach of a lease covenant and (2) the landlord has manifested an intent to take action on that violation. *Entrepreneur Ltd. v. Yasuna*, 498 A.2d 1151, 1160 (D.C.1985). Once that intent is manifested, the question becomes whether the forfeiture should be enforced. *Id.* Forfeiture clauses are enforceable without affording the tenant the right to cure when the breach has been of something other than the covenant to pay rent. *See Frog, Inc.*, 488 A.2d at 925. Common sense dictates that, in a contest over whether a lease has been terminated, a ruling by the Court that the lease is terminated will relate back to the first time that the landlord showed his intent to terminate as the effective date of termination.

In the case at hand, the landlord's predecessor-in-interest manifested his intent to terminate the lease at the very latest when he filed suit to obtain possession of the property on March 28, 1985. The tenant does not dispute the evidence of non-monetary breaches, so there is no issue of whether the breaches occurred. The Bankruptcy Court recognized in its December 16, 1986 order that further determinations regarding the lease should be made by the Landlord–Tenant Court of the District of Columbia. Through no fault of either the landlord or the tenant, however, the Clerk of the Superior Court of the District of Columbia has had to reschedule the hearing in that case several times. According to representations of counsel at oral argument, the Clerk of the Superior Court refused in May of this year to reschedule the hearing without an order of the Bankrupt-

cy Court permitting that case to go forward. Instead of waiting for the Landlord–Tenant Court's ruling on the suit for possession, the Bankruptcy Court ruled that the debtor-in-possession had a right to cure its nonmonetary defaults at the time it filed its petition in bankruptcy, and therefore it would not declare the lease terminated nor would it enforce the forfeiture clause.

In reaching its decision, the Bankruptcy Court relied upon two of its 1985 decisions in cases involving tenant/debtors who filed Chapter 11 bankruptcy petitions after their landlords had terminated their leases for nonpayment of rent and after suits for possession were filed. *See In re D.C. Diamond Head, Inc.,* 51 B.R. 309 (Bankr.D.D. C.1985); *In re Ted Liu's Szechuan Garden, Inc.,* 55 B.R. 8 (Bankr.D.D.C.1985). In those cases, the Bankruptcy Court denied the landlords' motions to lift the automatic stay on grounds that the leases were not terminated within the meaning of section 365(c)(3) prior to the filing of the petitions. In both cases, the Bankruptcy Court held that as long as the right to redeem the lease by payment of past due rent exists, no termination has occurred within the meaning of section 365(c)(3). *See* 51 B.R. at 315 n. 5; 55 B.R. at 10.

The reliance of the Bankruptcy Court on *D.C. Diamond Head* and *Ted Liu's* is misplaced. In a 1980 Bankruptcy Court decision, the Court stated:

> To permit a debtor to assert rights under an already expired lease by resort to equitable provisions of the Bankruptcy Code would undermine the confidence not only in the certitude of contracts but in the judicial system itself. Such a result was clearly not envisioned by the framers of section 365. That section itself relates to and refers to 'an unexpired lease of the debtor' and it clearly envisions that there be an ongoing relationship between the landlord and tenant over which the court can properly exercise jurisdiction.

*Marriott Corporation v. Chuck Wagon Bar–B–Que, Inc.,* 7 B.R. 92, 95 (Bankr.D. D.C.1980). In *Chuck Wagon,* there had

been nonmonetary breaches of the lease, no showing that the debtor could comply with specific lease requirements, a termination letter, and a final judgement of the D.C. Superior Court. The Bankruptcy Court held that the debtor's reliance upon the tenant's right to cure was "misplaced because such a right only exists where there is an underlying leasehold interest to protect and where the landlord's action has been instituted for the nonpayment of rent." *Id.* at 94. Indeed, in the *D.C. Diamond Head* case, the Bankruptcy Court cited its previous holding in the *Chuck Wagon* case, in which the Bankruptcy Court recognized that the *Trans–Lux* doctrine does not apply to cases involving nonmonetary defaults. *D.C. Diamond Head,* 51 B.R. at 317.

In this case, the Bankruptcy Court stated on October 16, 1986, that the nonmonetary breaches of the lease by Haitham Shurbaji and Club 99, Inc. were sufficiently serious to disqualify them from assuming the lease for their own use. At the same time, the Bankruptcy Court ruled that federal bankruptcy law and the strong policy in favor of assumption and assignment overrides the landlord's right to terminate the lease under District of Columbia law. Section 365(c)(3), however, flatly prohibits any attempt to assume a nonresidential lease that was terminated under applicable nonbankruptcy law prior to the Bankruptcy Court's order for relief. Also on October 16, 1986, the Bankruptcy Court cited equity as a factor in favor of permitting the debtor to assume and assign the lease, stating that Club 99's creditors would benefit from the proceeds of the assignment. Although the Bankruptcy Court is a court of equity, equitable considerations do not play a part in determining that a lease has been terminated as a matter of law for nonmonetary defaults prior to the filing of a bankruptcy petition.

The D.C. Court of Appeals stated in *Yasuna* that leases are strictly construed against the party seeking forfeiture and that courts may not enforce unconscionable forfeitures. 498 A.2d at 1160. The debtor argues that forfeiture in this case would be unconscionable, because all creditors would

be deprived of payment in a case in which all defaults have been cured, and no prejudice to the landlord has been demonstrated. Because cure of the breaches has taken place, the debtor argues that the Bankruptcy Court acted within its power to authorize the assignment of the lease in order to prevent forfeiture. The debtor cites one case in support of its position, for the proposition that cure of nonmonetary breaches is possible where the tenant acts with reasonable diligence and in good faith to commence the cure. *Interstate Restaurants, Inc. v. Halsa Corp.*, 309 A.2d 108, 109 (D.C.1973). Notwithstanding that platitude, the possibility of cure is very different from the *right* to cure one's nonmonetary defaults.

## IV. CONCLUSION

The Court holds that the Bankruptcy Court erred in holding that the lease in this case was not terminated at the time the debtor filed its bankruptcy petition. There exists no right of redemption under District of Columbia law in cases involving nonmonetary defaults. It is undisputed that the tenant breached nonmonetary provisions of the lease and that the landlord had manifested his intent to terminate the lease prior to the petition's filing. Under the law of the District of Columbia, the lease was terminated at the time the landlord manifested his intent to terminate the lease. That date—at the latest—was March 28, 1985, over one year prior to the filing of the debtor's bankruptcy petition. The Court remands this matter to the Bankruptcy Court for further proceedings in accordance with this opinion.