**In re B & F ASSOCIATES, INC., Debtor.**

**Bankruptcy No. 84–00609.**

United States Bankruptcy Court, District of Columbia.

June 3, 1985.

Howard Rubin, Washington, D.C., for debtor.

Stephen J. O'Brien, Brian Seeber, Washington, D.C., Debtor's Special Counsel.

Roger Luchs, Washington, D.C., for Landlord.

OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

On May 21, 1985, this Court heard and granted Debtor's motion for a stay pending appeal of this Court's order dated April 15, 1985. The April 15 order permitted 1120–19th Street Limited Partnership ("Landlord") to obtain possession of the premises in which the Debtor/Tenant has been conducting its business, by bringing a Landlord-Tenant proceeding in District of Columbia Superior Court. On May 28 the Debtor complied with a primary condition of the stay order by depositing $21,000 cash with the Clerk of this Court.[1] To date, the Debtor has complied with all conditions of the stay order.

On May 30, 1985, the Landlord filed a "motion for temporary restraining order ["TRO"], or, in the alternative, to vacate stay," alleging that the Debtor, immediately after obtaining the written order for a stay pending appeal on May 23, did several things contrary to the provisions of the lease agreement and a later agreement between the parties, namely, posting signs, doing construction work, selling a 10% interest in Debtor's business, and using the premises for other purposes than those agreed to—all without the Landlord's permission, as required under the lease agreement and the later agreement. The Landlord refers to evidence that the premises are now, as of 4:00 p.m. on May 29, 1985, being used as a "gay" bar, and contends that such a use is in contravention of (i) the tenant's agreement to conduct a "first-class operation in the judgment of landlord" and (ii) the tenant's acknowledgement that its business "was housed in a first-

---

1. The deposit was mostly in the form of five, ten and twenty dollar bills. It was brought to the Clerk's Office just before the 4:00 p.m. closing time.

class conservative office building." The Landlord asserts that "[t]he nature of Debtor's proposed business will severely disable [the Landlord] from attracting first-class tenants to the building." Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction or, in the Alternative, to Vacate Stay (hereafter "Memo"), pp. 3, 4 & 7, and Exhibits B & C thereto (filed May 30, 1985). The Landlord has requested an expedited hearing on its motion for a TRO.

Bankruptcy Rule 7001(7) requires any proceeding in a bankruptcy court "to obtain an injunction or other equitable relief" to be brought as an adversary proceeding. An adversary proceeding is commenced by filing and service of a complaint and summons. Bankruptcy Rules 7003 and 7004. Concurrently, a TRO may be sought pursuant to Bankruptcy Rule 7065. The Landlord has not followed this procedure. Therefore, its request for a TRO is procedurally deficient and will be denied for that reason, as well as for the additional reasons set forth below. The Landlord's alternative request, that this Court vacate the stay pending appeal, will also be denied for reasons set forth below. Finally, the request for a hearing will also be denied, based on consideration of the papers submitted by the Landlord and the entire record of this case.

The local law of the District of Columbia has traditionally favored the rights of tenants. Thus, as pointed out in this Court's opinions in *In re D.C. Diamond Head, Inc.*, 51 B.R. 309 (Bankr.D.D.C.1985), and in *In re Ted Liu's Szechuan Garden, Inc.*, 55 B.R. 8 (Bankr.D.D.C.1985), "local law in the District of Columbia grants a right of redemption of a terminated lease, and that right of redemption does not expire until

'execution is executed'." *D.C. Diamond Head*, at 311.

In *Burrows Motor Co., Inc. v. Davis*, 76 A.2d 163 (D.C.1950), our highest local court held that a tenant did not violate an anti-assignment clause by selling all of its corporate stock to a new owner. The court stated that "[f]orfeiture of a leasehold for conditions broken and restrictions upon the right to assign are both looked upon with disfavor." 76 A.2d at 164. Only recently, the District of Columbia Court of Appeals reaffirmed this principle, holding, in *1010 Potomac Assocs. v. Grocery Manufacturers of America, Inc.*, 485 A.2d 199 (D.C. 1984), that a landlord cannot lawfully, reasonably withhold consent to a sublease to a suitable tenant in order "to improve upon the bargain negotiated in the prime lease." [2] I have no doubt that forfeiture of a leasehold for breach of the conditions in the instant lease relating to posting of signs and to doing construction work will be similarly "looked upon with disfavor" by the courts of this jurisdiction. In both instances, I believe that only reasonable restrictions, reasonably applied, are entitled to be enforced. [3]

The Landlord in this case has made no allegation that the signs which the Debtor/Tenant was "plastering over the windows of the leased premises," *Memo*, p. 2, were more than temporarily placed, and designed to advertise the "new management" and to protect unsightly renovation work-in-progress (now presumably completed) from public gaze. There is no allegation that the signs were garish or unsightly. Nor is there any allegation that the construction work was other than a refurbishment of the interior with leasehold improvements that may ultimately benefit the Landlord.

---

**2.** The Bankruptcy Code not only disfavors anti-assignment clauses, it generally nullifies them in behalf of debtors in bankruptcy. 11 U.S.C. § 365(c)(1)(A); *but see* 11 U.S.C. § 365(b)(3)(C), (D), as amended in 1984 (relating to shopping center leases).

**3.** The restriction on posting signs may raise Constitutional, First Amendment concerns unless so construed. *See Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Amalgamated Food Employees Union v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968).

■ Finally, District of Columbia law makes it "an unlawful discriminatory practice" for a landlord to "refuse or restrict facilities ... for a tenant or lessee" based not only on "race [and] color" but also, *inter alia,* on the "sexual orientation ... of any individual." D.C.Code Ann. § 1–2515(a)(4) (1981). Not too many years ago landlords sought to, and did, prevent use of their premises by restaurants or bars catering primarily to Blacks, on the ground that such a use would severely disable the landlord "from attracting first-class tenants" and would detract from the "first-class conservative" nature of the buildings. In the District of Columbia, such a justification is no longer legally permissible, with respect to either race or sexual orientation, no matter how offended some "conservative" prospective tenants may be. *See Palmore v. Sidoti,* 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421, 426 (1984) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.").

In this case, private bias based upon the sexual orientation of the Debtor's clientele appears to be the only thing new about the Landlord's complaints. The record shows that the Debtor has operated a restaurant/bar on the premises known as "Whispers" for some time. The change of name to "Whispers & Secrets" is hardly earthshaking. In November 1984 the Landlord, apparently unsuccessfully, objected to renewal of the Debtor's liquor license on a variety of grounds, including "severe detriment ... to the building." Motion to Compel Debtor to Surrender Premises and for Expedited Hearing, Exhibit C (filed February 19, 1985).

In the instant motion papers, there is no allegation that the "gay" bar will promote rowdy or bizarre behavior any more than the previous "straight" restaurant/bar, or, except as to the sexual orientation of its customers, be less than "first class." The premise that "gay" automatically means "second class" is the very thing prohibited by the District of Columbia anti-discrimination statute. That statute prohibits a Landlord from obtaining redress on account of perceived private biases against a tenant.

■ Issuance of a temporary restraining order is an extraordinary remedy, designed to prevent irreparable, immediate injury and to preserve the status quo for a very brief period of time until the facts and the law can be more thoroughly explored later, in the context of a request for a preliminary injunction. Here, the new "gay" bar had already opened the day before the Landlord sought a TRO. Thus, this Landlord seeks not to preserve but to change the status quo as it existed when the request for a TRO was filed. Moreover, the Landlord has not alleged any facts that would indicate immediate and catastrophic consequences to it from the mere continuance of the new enterprise for a limited time, until a procedurally proper motion for preliminary injunction can be heard and decided. As explained above, it is not at all clear to this Court, on the facts alleged, that there is any substantial likelihood that the Landlord will ultimately prevail on the merits. On the other hand, it seems obvious that granting the relief requested would be disastrous for the Debtor/Tenant. Vacating the stay pending appeal would no doubt very quickly result in an eviction, causing the appeal to become moot and thereby causing forfeiture of the $21,000 only recently deposited. Restraining the Debtor from conducting its newly instituted business on the premises and requiring it to resume a prior business which has already conclusively proved itself to be unprofitable would no doubt be only scarcely less disastrous for the Debtor.

There is a strong public interest in having appeals decided on the merits, rather than being mooted out. *See Thompson v. Mazo,* 421 F.2d 1156, 1159–60 (D.C.Cir. 1970). Under the local law of this jurisdiction, as explained above, there is a strong public interest against forfeitures of leases and a strong public interest against discrimination in leasing based on sexual orientation. Finally, the timing of the Landlord's motion—one day *after* the Landlord

could have verified from the Clerk of this Court that the Debtor/Tenant had indeed deposited $21,000 (which would no doubt be forfeited if the stay were to be vacated), rather than *before* the new business opened—raises the very question of "clean hands" which the Landlord seeks to bring up against the Debtor/Tenant.

Naturally, I believe that this Court's original ruling, from which an appeal has been taken, was a correct interpretation of the Bankruptcy Code as it was very recently amended by Congress. Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333. I also join in the belief, recently expressed by another bankruptcy judge, that the new provision of the Bankruptcy Code at issue here is a "ticking time bomb." *In re By-Rite Distributing, Inc.,* 12 B.C.D. 1082, 1088, 47 B.R. 660 (Bankr.D.Utah 1985). In my view this new legislation, as now worded, is a trap for the unwary that unwisely restricts the power of judges to do justice and can result (and has resulted in this case) in a windfall for the Landlord and in a forfeiture which affects not only the Debtor/Tenant, but also the Debtor's creditors. I would be delighted if a higher court should hold that my interpretation is incorrect, and that what I believe to be a statutory straitjacket is not so restrictive.

For all the foregoing reasons it is ORDERED that (i) the Landlord's motion for temporary restraining order, or, in the alternative, to vacate the stay pending appeal, (ii) the Landlord's motion for a preliminary injunction or, in the alternative, to vacate the stay pending appeal, and (iii) the Landlord's motion for an expedited hearing are all DENIED.