CONRAD v. MEDINA et al.

No. 366.

Municipal Court of Appeals for the
District of Columbia.

Argued April 15, 1946.

Decided June 5, 1946.

Naomi Wheeler, of Washington, D. C., for appellant.

Stanley H. Kamerow, of Washington, D. C. (Allen L. Kamerow, of Washington, D. C., on the brief), for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiffs, as landlords, sued defendant, as tenant, for possession of housing accommodations under the District of Columbia Emergency Rent Act[1] on the ground that they desired it for their own immediate and personal use as a dwelling. The parties, together with their respective counsel, entered into a written stipulation that the tenant would consent to judgment provided she was granted a 60-day stay of execution, with the right to ask for a further stay in the event she was unable to find satisfactory living quarters by November 4, 1945. The case was called in open court on September 6, 1945, and the trial judge ordered that judgment be entered for plaintiffs in accordance with the stipulation. The clerk, however, failed to make a notation of the judgment on the back of the complaint, contrary to the practice in the Landlord and Tenant Branch of the trial court, and no entry of the judgment was made in the court's minutes or docket.

No further action was taken until November 20, when counsel for plaintiffs, desiring to order a writ of restitution, examined the docket and discovered the clerk's omission. Prompted by plaintiffs' counsel, the clerk recalled to mind the action of the trial judge and entered the judgment as of the date of the court's order of judgment. No notice of the clerk's action was given to defendant or her counsel. Based upon this entry, another clerk made the same entry in the court's docket in the clerk's office. The writ of restitution was then issued.

On November 26, 1945, counsel for defendant filed three motions: (1) to vacate the writ of restitution, (2) to stay the writ of restitution, and (3) to set aside the stipulation. The following day the judge then sitting in the Landlord and Tenant Branch overruled the motions, and, on December 5, this appeal followed. A supersedeas bond has effectively stayed execution during the pendency of this appeal. The tenant has, therefore, enjoyed a stay of more than six months.

In support of the motion to vacate the writ, the tenant urged that the judgment as

---

[1] Code 1940, §§ 45—1601, 45—1605.

entered by the clerk November 20 was null and void, principally because it was not entered in accordance with Landlord and Tenant Rule 8 of the trial court providing that, in the absence of a motion for a new trial, "judgment shall be entered on the 5th day after * * * finding of a judge."

Tenant's counsel concedes knowing of the lack of entry some time prior to the discovery of such fact by counsel for the landlords, and obviously knew of the entry by the clerk not later than November 26, when these motions were filed. Yet no appeal from the judgment itself has ever been taken, and the time for such appeal has long since expired.

 The contention that the judgment as entered by the clerk was void can not be sustained. Prior to the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, federal courts considered entry of a judgment as a mere ministerial duty, the lack of which did not affect the validity of the judgment for most purposes.[2] The judgment exists when ordered or pronounced by the court. The clerk's entry is not the judgment, but formal evidence thereof.[3] A duly rendered judgment is binding and enforceable between the parties, even though through neglect it has not been entered.[4]

 Tenant relies upon Rule 58 of the Federal Rules of Civil Procedure, providing in part that a judgment is not effective before proper entry. This rule does not apply to the Municipal Court, since it has not been adopted by that Court.[5] Such a rule, it is true, might tend to avoid the carelessness which has marked the clerical handling of this case. But we can not apply a rule which the trial court has not adopted. Rule 48 of the Municipal Court states that the action by the Court shall be evidenced by a minute entry, but does not make the entry a condition of the effectiveness of the Court's action.

 Although, as urged by tenant's counsel, Rule 66(e) of the Municipal Court provides for notice "immediately upon the entry of an order or judgment signed or decided out of the presence of parties or their counsel," this judgment was pronounced in the presence of the parties and their counsel, and hence the rule does not apply. It would have been better practice, under the circumstances, if notice of this entry had been given, but we are not justified in holding the judgment void because of the lack of notice. It results there was no ground for quashing the writ. This conclusion makes it unnecessary to discuss the question of our jurisdiction to entertain the appeal from the trial court's refusal to quash the writ.

 Tenant also urges that the motion for leave to withdraw the stipulation should have been granted because of alleged newly discovered evidence that the landlords are legally incapable of owning real estate in the District of Columbia because they are aliens. This claim is without merit. The record contains an affidavit that the male plaintiff has declared his intention to become a citizen. The Code provides that such a person is entitled to own real estate.[6] The record is silent as to the status of the other plaintiff. Furthermore, this being the National Capital, Congress has provided in the Code that attaches of foreign embassies and legations may own residences in the District of Columbia, and there are at least intimations in the record that one of the landlords occupies this status. The Code

[2] In re Ackermann, 6 Cir., 82 F.2d 971. See also Prichard v. Nelson, 4 Cir., 137 F.2d 312; Zielinski v. United States, 2 Cir., 120 F.2d 792; United States v. Rayburn, 8 Cir., 91 F.2d 162; Zadig v. Ætna Ins. Co., 2 Cir., 42 F.2d 142; People ex rel. Holbrook v. Petit, 266 Ill. 628, 107 N.E. 830; Doughty v. Meek, 105 Iowa 16, 74 N.W. 744, 67 Am.St.Rep. 282.

[3] Western Union Tel. Co. v. Dismang, 10 Cir., 106 F.2d 362 (decided since the Federal Rules of Civil Procedure became effective).

[4] Continental Oil Co. v. Mulich, 10 Cir., 70 F.2d 521. See also Van Ingen v. Berger, 82 Ohio St. 255, 92 N.E. 433, 19 Ann.Cas. 799.

[5] Plummer v. Johnson, D.C.Mun.App., 35 A.2d 647; Werth v. Nolan, D.C.Mun. App., 32 A.2d 386, reversed on other grounds 79 U.S.App.D.C. 33, 142 F.2d 9. See also United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290.

[6] Code 1940, § 45—1502 et seq.

further provides that lands unlawfully held by aliens shall be forfeited to the United States, after appropriate action by the United States Attorney for the District of Columbia. Since the Code does not say that aliens are incapable of owning land, but rather says it shall be unlawful for them to own land, we think that until such time as the land has been forfeited by due process of law their title is voidable at most, and not void. There was no error in the trial court's refusal to set aside the stipulation.

There remains to be considered the denial of the motion to stay the writ of restitution. The record shows that the trial judge refused the stay because he "found that under the Constitution he had no power to grant a stay as substantial property rights were involved." However, the sole reason advanced for the stay was the "undue hardship" an eviction would cause the tenant because she had been ill for several years. The court's ruling, therefore, was not an abstract one and must be considered against the background of the reason urged for the stay.

It is a well-recognized principle that courts, under the general supervisory powers over their process, have the discretionary power to temporarily stay execution of their own judgments whenever it is deemed necessary to accomplish the ends of justice.[7] Exercise of judicial discretion, however, must not be founded upon what an individual judge believes are abstract ideas of justice, but upon recognized legal or equitable principles.[8] The principal grounds for which stays have been allowed are the pendency of a timely appeal or motion, material facts occurring subsequent to the judgment, and antecedent facts showing fraud in the rendition

of the judgment, or want of jurisdiction apparent on the record.[9]

In some jurisdictions general statutes have been enacted providing for stays of execution under certain conditions.[10] In the Act creating the Small Claims and Conciliation Branch of the Municipal Court, involving suits for $50 or less, Congress specifically provided for stays of execution in order to give time for the payment of judgments.[11] With respect to judgments growing out of automobile accidents, Congress has also permitted payments in installments in order to avoid the suspension of the motor vehicle operator's driving permit and registration certificate under the terms of the Owners' Financial Responsibility Act.[12] Congress likewise has provided for stays of execution on all money judgments in the Municipal Court upon the furnishing of an appropriate supersedeas bond.[13] These statutes, however, as indicated, apply only to money judgments, and hence do not include judgments for the possession of real property. No statute, therefore, authorized the trial court to stay this execution. It results that the trial judge was correct in holding that he had no power to order a stay of execution under the conditions and for the reasons urged upon him.

We feel it appropriate to add, however, that the lack of this power does not necessarily mean that in the District of Columbia immediate eviction must inevitably follow every judgment for possession in landlord and tenant cases. In a supplemental brief the tenant here presents statistics showing that from July 1, 1942, through September 1945, approximately 129,000 landlord and tenant cases were filed in the Landlord and Tenant Branch,[14] and that nearly 15,000 stays of

---

[7] United States v. McLemore, 4 How. 286, 11 L.Ed. 977; Petrified Bone Mining Co. v. Rogers, C.C.E.D. Pa., 159 F. 1019; Eaton v. Cleveland, St. L. & K. C. R. Co., C.C.E.D. Mo., 41 F. 421; Lineker v. Dillon, D.C.N.D. Cal., 275 F. 460; 33 C.J.S., Executions, § 139; 21 Am.Jur., Execution, § 600.

[8] Potomac Small Loan Co. v. Myles, D.C.Mun.App., 34 A.2d 609; Franklin v. Chas. C. Schulman Co., D.C.Mun.App., 31 A.2d 871; Hubbard v. Hubbard, 77 Vt. 73, 58 A. 969, 67 L.R.A. 969, 107 Am. St.Rep. 749, 2 Ann.Cas. 315.

[9] City of Coral Gables v. Hepkins, 107 Fla. 778, 144 So. 385.

[10] 10 R.C.L., p. 1247 et seq.

[11] Code 1940, § 11—811.

[12] Code 1940, § 40—403.

[13] Code 1940, § 11—748.

[14] Most of these suits were for nonpayment of rent.

execution resulted. It is well known that the great majority of such stays resulted from agreements of the parties, with or without conciliation by the trial judge.

The shortage of residential accommodations, including rooms, apartments, and houses, was acute in the District of Columbia all during the recent war, and, though hostilities have ceased, the shortage apparently is now worse than ever. Such a difficult situation can not always be met by the application of the strict letter of the law. Even when cases involving housing accommodations have reached the stage of court contests, there remains an opportunity for equitable settlements through the co-operation of the court and landlords and tenants. Rule 9(c) of the Landlord and Tenant Branch contemplates that the court "shall make an earnest effort" to settle controversies in that Branch by conciliation. There are few landlords, experience shows, who will not respond to such efforts when made in the proper spirit. The records of the Landlord and Tenant Court give eloquent evidence that in thousands of cases landlords have consented to reasonable and even generous extensions of time. This co-operative attitude has grown out of the necessities of the times. The owner has a right, even under the Emergency Rent Act, to gain possession of his property for personal occupancy; but this right, most landlords realize, should be tempered by a due regard for the right of the tenant to shelter.

Affirmed.