TERRY, Associate Judge:
 

 Appellant seeks review of an order of the Superior Court awarding it judgment on a promissory note on which appellees defaulted. Appellant contends that the trial court erred (1) in finding the interest rate charged under the note to be usurious, and therefore reducing the principal amount of the loan by the amount of interest already paid, (2) in denying interest on the judgment pending its collection, and (3) in staying execution of the judgment on the condition that appellees pay a certain sum of money each month into the registry of the court until the judgment is satisfied. All three arguments have merit; accordingly, we reverse.
 

 I
 

 Appellant, Finance America Corporation, extended a loan to appellees, Mr. and Mrs. Moyler, in the amount of $2,790.69, plus interest at an annual rate of 20.9 percent.
 
 [1]
 
 In return the Moylers signed a promissory note for that amount, payable to appellant. The note provided that the Moylers would make certain monthly payments on the principal and interest of the loan for approximately four years, until the loan was paid in full. It also provided that if they failed to make any payment, appellant had the option to declare the unpaid balance immediately due and payable. Payments were to be made to appellant “at its above
 
 *912
 
 office,” the address of which was in Camp Springs, Maryland.
 

 After one year the Moylers had made only three of the required monthly payments. Given this default, appellant exercised its option to accelerate the payment schedule and declared the unpaid balance immediately due and payable. When the Moylers failed to pay that amount, appellant filed this action seeking a judgment for the balance due, plus interest.
 

 In a non-jury trial, appellant proved the existence of the promissory note
 
 [2]
 
 and the Moylers’ default through the testimony of one of its employees. Mr. and Mrs. Moy-ler, appearing
 
 pro se,
 
 conceded that they had defaulted on the note. They testified, however, that they had done their best to meet their obligations, but that they had fallen behind in making the payments when they both had lost their jobs.
 

 After hearing the evidence, the court found that Mr. and Mrs. Moyler had entered into the loan agreement with appellant, that they had defaulted on the note, that appellant was therefore entitled to demand payment of the entire balance due, and that appellant should be awarded judgment for the amount of the unpaid balance of the loan. However, the court also ruled that the interest rate charged was usurious, and accordingly ordered that appellant forfeit all interest paid on the loan. In addition, the court refused to allow the payment of interest on the judgment pending its collection, and stayed execution of the judgment on the condition that Mr. and Mrs. Moyler pay a certain sum of money each month into the registry of the court until the judgment was satisfied.
 

 Appellant filed a motion to amend the judgment pursuant to Super.Ct.Civ.R. 59(e). The court denied the motion, and this appeal followed.
 

 II
 

 Appellant first challenges the court’s application of the District of Columbia usury law to the promissory note in this case. It contends that the court should instead have applied Maryland law, which permits the rate of interest charged. We agree.
 

 After the court had determined that appellant was entitled to judgment on the note, it
 
 sua sponte
 
 raised the issue of usury. It ruled that the interest rate required by the note, 20.9 percent, exceeded the maximum rate allowable under D.C. Code § 28-3301(a) (1981), which was 15 percent. Therefore, pursuant to D.C.Code § 28-3303 (1981), the court ordered that appellant forfeit all interest paid on the note. The court credited all of the payments made by Mr. and Mrs. Moyler against the principal of the loan and entered judgment for appellant in the amount of $2,112.71.
 
 [3]
 

 The court erred in applying the District’s usury law in this case because there was no evidence of the place of making of the note.
 
 [4]
 
 D.C.Code § 28-3303 (1981), entitled “Usury defined,” provides:
 

 If a person or corporation
 
 contracts in the District,
 

 (1) verbally, to pay a greater rate of interest than 6 percent per annum, or
 

 (2) in writing, to pay a greater rate than is permitted under section 28-3301 or 28-3308 or under chapter 36 of this subtitle, the creditor shall forfeit the whole of the interest so contracted to be received. [Emphasis added.]
 

 
 *913
 
 This provision on its face applies only to contracts made in the District,
 
 [5]
 
 and we are bound by its plain meaning.
 
 Swinson v. United States,
 
 483 A.2d 1160, 1163 (D.C.1984);
 
 In re Estate of Glover,
 
 470 A.2d 743, 749 (D.C.1983);
 
 see Caminetti v. United States,
 
 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Absolute proof of the place of making is not required to make a contract subject to the usury statute, but there must be at least some evidence from which the place of making can be inferred.
 
 E.g., Montgomery Federal Savings & Loan Association v. Baer,
 
 308 A.2d 768, 770 (D.C.1973) (evidence that real estate settlement took place in the District for property located in the District was sufficient to permit application of the District’s usury statute, although there was no other evidence of the promissory note’s place of making);
 
 Holcombe v. O’Sullivan,
 
 93 A.2d 96 (D.C.1952) (evidence that a promissory note was dated at Washington, D.C., was sufficient to give rise to a presumption, absent evidence to the contrary, that it was made in the District and therefore subject to the District’s usury law). Because there was no proof whatsoever in this case of the note’s place of making, the court erred in applying the District’s usury law to reduce the amount of the judgment by the sum of the interest paid.
 
 [6]
 

 The court also erred in refusing to apply Maryland usury law. In determining whether a contract for the payment of money is usurious, our cases require us to apply the law of the place where the contract is made and performed.
 
 See Second National Bank v. Smoot,
 
 9 D.C. (2 Ma-cArth.) 371 (1876);
 
 Gallaudet v. Sykes,
 
 8 D.C. (1 MacArth.) 489, 491 (1874). When there is no evidence of the place of performance, however, we have held that it is presumed to be the same as the place of making.
 
 Holcombe v. O’Sullivan, supra,
 
 93 A.2d at 98. On the facts of this case, we conclude that the converse is also true: in the absence of evidence to the contrary, the place of making may be presumed to be the same as the place of performance.
 

 Whenever possible, we will consider both the place of making and the place of performance in determining the applicable usury law in a choice-of-law situation involving a promissory note. We look to both factors to ascertain the presumed intent of the parties regarding the applicable law
 
 [7]
 
 and to decide whether that intent should be given effect.
 
 [8]
 
 For the most part, these factors are interchangeable, as is implicit in our holding in
 
 Holcombe v. O’Sullivan, supra.
 
 Their function is the same, and the only difference between them is that one may take on more or less importance depending on the facts of the case. For example, if the place of making is purely fortuitous, its value as a factor is greatly diminished.
 
 See
 
 Restatement,
 
 supra,
 
 note 7, at § 188 comment e. The same is true with respect to the place of performance. If it is fortuitous or unknown to the parties at the time of contracting, or if performance is to take place in more than one state, the place of performance is of little use as a factor in discerning the parties’ intent.
 
 Id.
 
 Because we cannot know which factor may be
 
 *914
 
 more helpful in a given case, we examine both whenever we can.
 

 In this case, however, we cannot. All we know is that Maryland is the place of performance, that it was known to be such at the time the note was signed, and that its location is not merely fortuitous since it is the lender’s place of business.
 
 [9]
 
 “Repayment is the ultimate aim and objective of the contract, and the place where the contract requires that repayment be made will naturally loom large in the minds of the parties.” Restatement,
 
 supra
 
 note 7, at § 195 comment b. Thus the place of performance is relevant in determining the intent of the parties. Although it would have been helpful in this case to consider the place of making, the lack of evidence on that point does not hinder our decision. We hold, on the authority of
 
 Holcombe v. O’Sullivan, supra,
 
 and on the basis of general conflict of laws principles, that in the absence of evidence to the contrary, the place of making shall be presumed to be the same as the place of performance, provided that the place of performance bears a reasonable relationship to the promissory note and the parties.
 
 [10]
 

 Since the promissory note in this case was payable at appellant’s office in Maryland, and since there was no evidence of the place of making, it may be presumed that the place of making was also Maryland. The trial court should therefore have followed Maryland law in determining whether the note was usurious. Had it done so, it would have found that the interest rate charged under the note, 20.9 percent, was legal. Md.Com.Law Code Ann. § 12-306(a)(3) (1983).
 

 Ill
 

 Appellant next challenges the court’s application of D.C.Code § 28-3302(c) (1984 Supp.) to deny it the right to collect interest on the judgment pending its satisfaction. Appellant contends that the court should have applied D.C.Code § 15-110 (1981), since the promissory note specified a rate of interest.
 

 The trial court, citing the Moylers’ good-faith efforts to satisfy their obligations and the fact that the interest rate charged was illegal under District of Columbia law, relied upon section 28-3302(c) to deny appellant’s request for post-judgment interest on the amount due. Section 28-3302(c) provides in pertinent part:
 

 The rate of interest on judgments and decrees ...
 
 where the rate of interest is not fixed by contract,
 
 shall be 70 percent of the rate of interest set by the Secretary of the Treasury ...: Provided, that a court of competent jurisdiction may lower the rate of interest under this subsection for good cause shown or upon a showing that the judgment debtor in good faith is unable to pay the judgment. [Emphasis added.]
 

 The court’s reliance on this statute was misplaced. Because the interest rate was fixed by the note (20.9 percent), this provision was not applicable.
 
 [11]
 

 Appellant’s request for post-judgment interest is governed instead by D.C. Code 15-110 (1981), which provides:
 

 In an action on a contract for the payment of a higher rate of interest than is lawful in the District, made or to be performed in a State or territory of the United States where such a contract rate of interest is lawful, the judgment for the plaintiff shall include the contract
 
 *915
 
 interest to the date of the judgment and interest thereafter at the rate of 6 per cent per annum until paid.
 

 Because the note was payable in Maryland, where the interest rate was lawful, the court should have followed section 15-110 and granted appellant’s request for post-judgment interest.
 

 IV
 

 Finally, appellant challenges the court’s order staying execution of the judgment on the condition that appellees pay $65 per month into the court registry until the judgment is satisfied. Appellant contends that the court exceeded its authority in entering such an order.
 

 The court stayed execution of the judgment, apparently because it believed that the interest rate was illegal and that appellees had made good-faith efforts to satisfy their debt. It explained its ruling as follows:
 

 I am reminded that in Civil II we have authority similar to that of the Small Claims Court to stay execution of judgments. I am going to assume that that is correct. My understanding has been exercised, in the discretion of the court, by other members of this court and I am going to direct that execution of this judgment be stayed....
 

 This case, however, was not governed by the rules of the Small Claims Branch of the court, since it was not tried in that branch, but rather by the Superior Court Rules of Civil Procedure. Under the latter rules, the court is authorized to stay the execution of a judgment for a number of reasons, but none of them are applicable to this case.
 
 See
 
 Super.Ct.Civ.R. 62, 62-1.
 

 The civil rules, unlike the small claims rules,
 
 [12]
 
 do not authorize the court to stay execution of a judgment for good cause shown. Contrary to the court’s understanding, its authority to grant a stay of execution is no greater in Civil II cases than it is in Civil I cases.
 
 [13]
 
 Although the rules make some distinctions between Civil I and Civil II eases,
 
 [14]
 
 none has been made with regard to stays of execution.
 

 The court also lacked authority under its general supervisory powers to enter a stay in order to prevent what it deemed to be an undue hardship on appellees. We made that clear in
 
 Conrad v. Medina,
 
 47 A.2d 562, 565 (D.C.1946):
 

 It is a well-recognized principle that courts, under the general supervisory powers over their process, have the discretionary power to temporarily stay execution of their own judgments whenever it is deemed necessary to accomplish the ends of justice. Exercise of judicial discretion, however, must not be founded upon what an individual judge believes are abstract ideas of justice, but upon recognized legal or equitable principles. The principal grounds for which stays have been allowed are the pendency of a timely appeal or motion, material facts occurring subsequent to the judgment, and antecedent facts showing fraud in the rendition of the judgment, or want of jurisdiction apparent on the record. [Footnotes omitted.]
 

 In
 
 Conrad
 
 this court affirmed the denial of a motion to stay the execution of a writ of restitution. We held that the “undue hardship” that would be caused by the eviction of a tenant who had been ill for years was not a sufficient ground for granting the stay.
 
 See also National Capital Housing Authority v. Douglas,
 
 333 A.2d 55 (D.C.1975).
 
 Conrad
 
 controls this case and com
 
 *916
 
 pels us to hold that the court erred in staying execution of the judgment.
 

 V
 

 The judgment of the Superior Court is reversed. This case is remanded with directions to enter judgment in favor of appellant for the balance due on the promissory note, with interest in accordance with D.C.Code § 15-110 (1981).
 

 Reversed and remanded.
 

 [1]
 

 . This loan was made to refinance a prior loan between the parties, upon which the Moylers had defaulted. The original loan had been made to finance the purchase of some furniture and rugs.
 

 [2]
 

 . The nóte was introduced into evidence and is part of the record on appeal.
 

 [3]
 

 . The promissory note was for $2,790.69 plus interest. The court found that appellees had paid $677.98 in interest, and subtracted that amount from the original figure to arrive at the amount of the judgment.
 

 [4]
 

 .Mr. Moyler provided the only reference at trial to the place where the note was made. He testified, "So we did go out to him [appellant’s manager] and refinanced it.... And anyway, we went out. We refinanced the loan, brought it back up to date." There was no testimony identifying the place to which the Moylers "went out” to sign the note.
 

 [5]
 

 . The District’s usury law is more restrictive than Maryland's, which simply states: “‘Usury’ means the charging of interest by a lender in an amount which is greater than that allowed by this subtitle.” Md.Com.Law.Code Ann. § 12-101(k) (1983).
 

 [6]
 

 . Because usury is an affirmative defense in an action on a promissory note, the Moylers had the burden of proof on the issue of usury.
 
 Beatty v. Franklin Investment Co.,
 
 179 A.2d 913, 915 (D.C.1962).
 

 [9]
 

 .
 
 Cf.
 
 Restatement,
 
 supra
 
 note 7, at § 195 comment d.
 

 [10]
 

 . Our holding is consistent with the general rule that the validity of a contract will be upheld against a challenge based on a claim of usury when the usury law of one of the states involved would sustain the transaction.
 
 See generally
 
 Restatement,
 
 supra
 
 note 7, at § 203.
 

 [11]
 

 .D.C.Code § 28-3302 has been applied to cases in which no interest rate was fixed by contract.
 
 E.g., Silver Hill Concrete Corp. v. Tho-mason Industries Corp.,
 
 556 F.Supp. 291, 295 (D.D.C.1982),
 
 aff’d without opinion,
 
 227 U.S. App.D.C. 165, 704 F.2d 1294 (1983);
 
 E.F. Hutton & Co. v. Burkholder,
 
 413 F.Supp. 852, 859 (D.D.C.1976).
 

 [7]
 

 .
 
 See
 
 2 J. Beale, A Treatise on the Conflict of Laws § 332.4, at 1091-1092 (1935); Restatement (Second) of Conflict of Laws § 188 comment e, § 195 b (1969).
 
 See generally
 
 R. Leflar, American Conflicts of Law §§ 145-146 (3d ed. 1979).
 

 [8]
 

 .
 
 See Second National Bank
 
 v.
 
 Smoot, supra,
 
 9 D.C. (2 MacArth.) at 374 (parties may not evade the usury laws of a state by selecting a place of making and performance which would ordinarily call for the application of a law favorable to them);
 
 see also
 
 Restatement,
 
 supra
 
 note 7, at § 203 comment e.
 

 [12]
 

 .
 
 See
 
 Super.Ct.Sm.Cl.R. 16(c).
 

 [13]
 

 . Civil cases in the Superior Court are divided into two categories and maintained on separate calendars, depending on their nature and degree of complexity. Routine cases are classified as Civil II; more difficult ones are classified as Civil I.
 
 See
 
 Super.Ct.Civ.R. 40-11. The court’s civil rules apply equally to both types of cases, except to the extent specifically provided in certain rules.
 

 [14]
 

 .See
 
 Super.Ct.Civ.R. 12-I(n) (motions), 26(d), (e) (discovery), 33(a) (interrogatories).