**IDEAL ELECTRONIC SECURITY CO., INC., et al., Appellants/Cross–Appellees,**

v.

**INTERNATIONAL FIDELITY INSURANCE COMPANY, Appellee/Cross–Appellant.**

Nos. 96–7169, 96-7186.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 3, 1997.

Decided Nov. 7, 1997.

John W. Karr, Washington, DC, argued the cause and filed the briefs for appellants/cross-appellees.

Neil L. Henrichsen, Washington, DC, argued the cause and filed the briefs for appellee/cross-appellant.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This case involves a claim under an indemnity agreement by a surety company, appellee International Fidelity Insurance Co. ("IFIC" or "surety"), against the holders of a payment bond, appellants Ideal Electronic Security Co., Inc., *et al.* ("Ideal"). Upon securing the payment bond, Ideal agreed to indemnify IFIC against any losses or expenses, including attorney's fees incurred to defend against claims arising under the bond. In this case, IFIC seeks recovery of attorney's fees incurred by the surety in defending a claim brought by Modern Electric, Inc. ("Modern") against appellants for an alleged underpayment on subcontracted work. The appellants claim (1) that because the surety failed to justify the hiring of counsel, no attorney's fees should be awarded and (2) that even if a claim for attorney's fees is warranted, the surety failed to demonstrate that the amount sought in this case is reasonable.

The District Court found that IFIC is entitled to fees for its defense of appellants on the claim brought by Modern; however, because IFIC asserted that certain billing statements supporting the claim for fees were protected by the attorney-client privilege (and redacted portions of some billing statements), the District Court reduced the award of fees for the amounts covered by the purportedly privileged materials. Ideal contends that it was entitled to review all billing statements, so that it would be in a position to show that the surety's arrangements with counsel were both unnecessary and unreasonable. The surety cross-appeals, claiming that the District Court erred in reducing the award of attorney's fees by the amounts covered by privileged documents.

The contract claims arising under the disputed indemnity agreement are governed by the law of the District of Columbia. Under D.C. law, once a party's contractual entitlement to attorney's fees has been ascertained, it is within the trial court's sound discretion to determine a reasonable fee award. In the instant case, we find that the District Court was correct in holding that the surety was entitled to claim attorney's fees, but abused its discretion in assessing the amount due to IFIC.

Appellants are entitled to full discovery of information underlying the claim for fees; only after obtaining such discovery will the appellants be in a position to assess the reasonableness of IFIC's position and then present to the court any legitimate challenges to the surety's claim. The reasonableness of any portion of the billing statements can only be determined by examining all billing statements pertaining to the legal services provided as a whole. Appellee effectively waived its attorney-client privilege with regard to all communications going to the reasonableness of the fees claimed when it placed the purportedly privileged matters in dispute by claiming indemnification for the attorney's fees. Accordingly, we remand the case to allow appellants an opportunity to challenge the reasonableness of IFIC's claim for fees following full disclosure of the redacted portions of the billing statements. If IFIC declines to disclose the redacted portions of the billing statements, then the entire claim for fees must be denied by the District Court.

## I.  BACKGROUND

The Miller Act requires payment bonding to assure payments to subcontractors on construction work undertaken for the United States. 40 U.S.C. §§ 270a–270f (1994). Ideal and its principals, Cora Williams and Kenneth Rogers, entered into a contract with the United States to replace or repair electrical transformers at the Walter Reed Army Medical Center in Washington, D.C. Since the contract was of a type governed by the Miller Act, Ideal was required to obtain a payment bond to secure the contract. IFIC provided bonding for the base year, July 29, 1991 to July 28, 1992. In order to induce IFIC to provide the payment bond, Ideal entered into an indemnity agreement in which it agreed, under certain conditions, to indemnify IFIC against any losses or expenses arising from the payment bond, including attorney's fees incurred in defending against claims arising under the bond and costs incurred in enforcing the terms of the indemnity agreement itself. *See* Agreements of Indemnity at ¶ 2,

*reprinted in* Appendix of Appellee/Cross–Appellant at 21, 25 (hereinafter "Indemnity Agreement").

This litigation commenced when a subcontractor on the Walter Reed project, Modern, sued both Ideal and IFIC, claiming that Ideal had underpaid Modern for subcontracted work. Modern brought this suit in the United States District Court for the District of Maryland, invoking that court's jurisdiction under the Miller Act, 40 U.S.C. § 270b, which provides a federal cause of action for persons supplying labor and materials on federal construction projects to collect payment under the bonds required by 40 U.S.C. § 270a. The suit was subsequently transferred to the District Court for the District of Columbia.

IFIC formally tendered its defense to Ideal, upon the condition that Ideal first deposit with IFIC cash or collateral in the amount of $300,000 to cover its potential liability as surety, including its attorney's fees. *See* Memorandum Opinion at 4–5 (May 3, 1996) (hereinafter "Mem. Op."). Ideal declined to provide the requested reserve payment; as a consequence, IFIC mounted its own defense against Modern's claims. *Id.* at 5. After discovery proceedings and two hearings, the District Court granted IFIC's motion for summary judgment dismissing Modern's claims against IFIC. *Id.* at 5–6.

IFIC asserted the indemnification claim at issue in this appeal in a cross-claim against Ideal and a third-party complaint against Ideal's principals. On October 13, 1995, the District Court denied a motion by IFIC for summary judgment on its indemnification claim. A jury trial was held on April 25 and 26, 1996. At the conclusion of the trial, the District Court granted IFIC's motion for judgment as a matter of law pursuant to FED. R. CIV. P. 50(a)(1). *See* Mem. Op.; Order Awarding Attorney's Fees (July 1, 1996). In supporting its claim for attorney's fees, IFIC submitted billing statements from counsel. However, over the objection of Ideal, IFIC redacted portions of the billing statements, contending that the undisclosed materials were protected by the attorney-client privilege. The District Court resolved this dispute by awarding fees only for the unredacted portions of the billing statements. Mem. Op. at 11–12. Subsequently, IFIC filed a motion for additional fees incurred in prosecuting the indemnity action. The District Court summarily denied this motion, stating simply that "the judgment already awarded to IFIC is reasonable compensation for legal work that was necessary to protect IFIC's position." Order Denying Additional Attorney's Fees (July 18, 1996).

Ideal appeals the District Court's judgment as a matter of law on the question of liability and on the reasonableness of the amount of fees awarded. IFIC cross-appeals the District Court's denial of fees based on redacted billing statements and also the court's denial of fees incurred in prosecuting the indemnity action.

## II. ANALYSIS

### A. *Choice of Law*

■ Before turning to the merits of the parties' appeals, we must first determine which law governs the case. This appeal involves a state contract claim which is in federal court under supplemental jurisdiction. The Miller Act provides a federal cause of action for subcontractors and suppliers on construction projects governed by the Act to collect on payment bonds required by the Act. 40 U.S.C. § 270b (1994); *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 127, 94 S.Ct. 2157, 2164, 40 L.Ed.2d 703 (1974). Accordingly, Modern's suit against Ideal and IFIC was properly brought in federal district court under the court's federal question jurisdiction. Although contract claims between the various parties to a case brought under the Miller Act may be heard by the federal court hearing the Miller Act claim, the appended contract claims are governed by state, not federal, law. *See, e.g., United States for Use of Briggs v. Grubb*, 358 F.2d 508, 515 (9th Cir. 1966) (local law rather than federal law is applicable to cross-complaint under a Miller Act bond); *Western Casualty & Surety Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir.1954) (suit by surety against general contractors as principals on payment bond was not an action under the Miller Act, since the Act provides

*only* for an action on the payment bond by one who has furnished labor and material and has not been paid).

When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit. *See Lee v. Flintkote Co.*, 593 F.2d 1275, 1278–79 n. 14 (D.C.Cir.1979). The District of Columbia has adopted the Restatement (Second) of Conflict of Laws § 188. *Finance America Corp. v. Moyler*, 494 A.2d 926, 929 & n. 7 (D.C.1985). Where, as here, the parties to a contract have not specified which law governs their agreement, the Restatement approach requires the court to weigh various jurisdictions' contacts with the transaction at issue and to determine which has the most substantial interest in the matter. According to the record, IFIC is domiciled in New Jersey, Appellants Williams and Rogers are domiciled in Virginia, Ideal is domiciled in the District of Columbia, the indemnity agreement was entered into in the District of Columbia, and the subject matter of the contract (the bond) secures construction taking place in the District of Columbia. On balance, and in the absence of any arguments by the parties to the contrary, we hold that interpretation of the indemnity agreement is controlled by D.C. law.

B. *Judgment as a Matter of Law in Favor of IFIC*

We review *de novo* the District Court's order granting IFIC's motion for judgment as a matter of law. *Hendry v. Pelland*, 73 F.3d 397, 400 (D.C.Cir.1996). We can affirm the District Court's judgment only if we find "no legally sufficient evidentiary basis for a reasonable jury to find for" Ideal under applicable D.C. law, "considering the evidence in the light most favorable to [Ideal] and making all reasonable inferences in [its] favor." *Id.* at 400; FED. R. CIV. P. 50(a)(1).

Under D.C. law, contractual provisions providing for the indemnification of attorney's fees are generally enforceable in accordance with the intentions of the contracting parties, unless enforcement would be contrary to public policy. *Wisconsin Ave.*

*Assocs. v. 2720 Wisconsin Ave. Coop. Ass'n*, 441 A.2d 956, 964–65 (D.C.1982); *FDIC v. Bender*, 127 F.3d 58 (D.C.Cir.1997). "Whether an attorneys fees award is available is a matter of contract interpretation by the trial judge, unless there is an ambiguity that needs to be resolved to determine the intention of the parties. In that case, the entitlement question must be resolved by the factfinder." *Urban Masonry Corp. v. N&N Contractors, Inc.*, 676 A.2d 26, 33 (D.C.1996) (citations omitted).

The parties' indemnity agreement provides a "good faith" standard for determining whether Ideal is obligated to indemnify IFIC for attorney's fees:

the Surety shall be entitled to charge for any and all disbursements made by it in good faith in or about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and [ ] vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

Indemnity Agreement at ¶ 2. However, the parties dispute exactly what this good faith standard requires. IFIC contends that it is entitled to attorney's fees absent any showing of fraud or bad faith. Brief of Appellee/Cross–Appellant at 12. Ideal argues that the agreement's good faith standard requires something more than the mere absence of fraud. Rather, Ideal asserts that, in order to be entitled to indemnity for any resulting attorney's fees under the parties' agreement, IFIC must show (1) that its decision to retain separate counsel to defend against Modern's claims was reasonable and (2) that the services rendered by counsel were reasonable. Brief of Appellants/Cross–Appellees at 7–8.

There is no clear precedent under District of Columbia law defining the scope of a contractual "good faith" standard of the sort at issue here. However, courts in other jurisdictions have indicated that, as a general matter, a surety must show something akin

to *reasonable necessity* when seeking attorney's fees under an indemnity agreement. For example, the Fifth Circuit, applying Mississippi law, has held that

> [A]n indemnity agreement is not a blank check; it does not entitle the surety [ ] to reimbursement for legal fees which are unreasonable or unnecessary. To hold otherwise would allow [a surety] to retain counsel and to charge attorneys' fees against the indemnitor even when the surety [ ] does not require a separate legal defense to protect its interests. The indemnity contract cannot reasonably be construed as requiring the indemnitee to bear the cost of such redundant representation.

*Jackson v. Hollowell,* 685 F.2d 961, 966 (5th Cir.1982). *See also Sentry Ins. Co. v. Davison Fuel & Dock Co.,* 60 Ohio App.2d 248, 396 N.E.2d 1071, 1074 (1978) (rejecting all claims for recovery of fees under indemnity agreement's good faith standard for services which were simultaneously being rendered competently by the principal's counsel); *Central Towers Apts. v. Martin,* 61 Tenn.App. 244, 453 S.W.2d 789, 799–800 (1969) (probing the reasonableness and necessity of a surety's incurred attorney's fees, given the identity of interests between principal and surety in the indemnity context). *But see Wilson & Co. v. Walsenburg Sand & Gravel Co.,* 779 P.2d 1386, 1387 (Colo.Ct.App.1989) (interpreting plain meaning of similar good faith standard in similar indemnity agreement as limiting defenses against liability to bad faith or fraud).

In any case, we need not resolve the contract interpretation issue because, even if the District of Columbia Court of Appeals were to interpret the agreement's good faith standard to require a showing of reasonableness, or if a jury were to find that the good faith standard was intended by the parties to include a showing of reasonableness, no reasonable fact-finder could find that IFIC's decision to hire counsel to defend against Modern's suit was unreasonable under the uncontested facts of this case. Accordingly, we hold that judgment in favor of IFIC is appropriate pursuant to Rule 50(a)(1) with regard to the liability question of whether

Ideal is required, under the parties' indemnity agreement, to indemnify IFIC for attorneys' fees incurred by IFIC to defend itself against Modern's claims.

Ideal alleges that IFIC's decision to mount its own defense against Modern's claims was unreasonable because Modern's claims against IFIC were obviously without merit and, moreover, Ideal had offered to defend IFIC against these claims. In essence, Ideal contends that IFIC did not need to hire counsel to mount a defense against Modern's claims because it could have relied on Ideal to defend these claims, even though Ideal was unwilling or unable to meet IFIC's demand for a reserve payment to cover IFIC's alleged liability to Modern.

This court resolved a similar claim in *Carroll v. National Surety Co.,* 24 F.2d 268 (D.C.Cir.1928). In that case, as here, a construction contractor entered into an indemnity agreement in order to induce a surety to provide a payment bond for a construction project. *Id.* at 269. The relevant language in the indemnity agreement in *Carroll* was virtually identical to the relevant contract language at issue here. *Id.* at 269–70. In *Carroll,* the surety was sued for payment under the bond. The surety, believing that it had no defense to the claims, settled the claims and then sought indemnification for the settlement costs from the contractor pursuant to their indemnity agreement. *Id.* The contractor disputed the surety's indemnification claim, alleging, among other things, that the surety was mistaken in its belief that it had no defense to the subcontractors' claims and that, in fact, it had a complete defense. *Id.* at 270. The contractor further argued that, since it had notified the surety that it was willing and able to mount a complete defense to the subcontractors' claims, the surety's settlement of the claims was voluntary and thus the contractor should not be required to indemnify the settlement costs. *Id.* This court rejected the contractor's arguments, holding that the contractor's notification to the surety that it was ready to furnish a complete defense to the claims against the surety did not deprive the surety of the right to compromise the claims where the indemnity agreement authorized such a

compromise. Under the parties' indemnity agreement, the surety waived this right only on the condition that the contractor deposit with the surety satisfactory collateral for the payment of any judgment which might be entered against it. Since the contractor had not tendered such a deposit, the surety had acted within its rights under the indemnity agreement to settle the claims brought against it under the bond and to seek indemnity from its principal for the same. *Id.* at 270–71. Similarly, Ideal's offer to mount a complete defense to Modern's claims against IFIC did not deprive IFIC of its right to mount its own defense against these claims and then look to Ideal to indemnify its litigation costs.

Ideal does not offer any persuasive arguments that IFIC's decision to retain counsel to defend against Modern's suit was unreasonable. Regardless of the purported strength or weakness of Modern's claims against IFIC, no reasonable fact-finder could find that IFIC's decision to hire separate counsel to defend against Modern's claims was unreasonable, in light of Ideal's inability or unwillingness to post satisfactory collateral to cover the amount for which Modern sought to hold IFIC liable.

## C. *Reasonableness of the Fee Award*

Although it was not unreasonable for IFIC to retain counsel to defend against Modern's claims, that is not the end of our inquiry. The second question at issue concerns the reasonableness of the fee amount claimed by IFIC.

The District of Columbia Court of Appeals has long held, and this court has acknowledged, that once a contractual entitlement to attorney's fees has been ascertained, the determination of a reasonable fee award is for the trial court in light of the relevant circumstances. *Bender*, 127 F.3d at 62–64 (applying D.C. law). Where a claim for attorney's fees arises from a private contract provision, such a claim does not embody a right to trial by jury. *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313–15 (2d Cir. 1993); *Kudon v. f.m.e. Corp.*, 547 A.2d 976, 978–80 (D.C.1988). Rather, the reasonableness of an attorney's fees award is within the sound discretion of the trial court and is reviewed only for abuse of discretion. *Singer v. Shannon & Luchs Co.*, 779 F.2d 69, 70 (D.C.Cir.1985).

Even when attorney's fees are stipulated in an agreement, the trial court may still inquire into the reasonableness of the fees claimed under an indemnity agreement if those fees are challenged. *Columbia Plaza Corp. v. Security Nat'l Bank*, 676 F.2d 780, 791 (D.C.Cir.1982) (applying D.C. law). A contractual provision stipulating how the amount of the attorney's fees award shall be calculated "creates a rebuttable presumption that the stipulated amount is reasonable." *Bender*, 127 F.3d at 65. However, if a stipulated fee is properly challenged, "the district court [is] obliged under District law to award only reasonable fees, with reasonableness a determination to be made by the judge." *Id.*, 127 F.3d at 66.

IFIC points to two provisions of the parties' agreement which, in its view, limits the standard of reasonableness. First, IFIC notes that the agreement provides that the surety may sometimes recover disbursements even when there is no showing of "liability, necessity or expediency." *See* Indemnity Agreement at ¶ 2. The parties' agreement allows charges only for "disbursements made . . . in good faith," however. *Id.* As for attorney's fees (as distinguished from disbursements to settle claims), the parties agreed at oral argument that disbursements for attorney's fees can only be found to be in good faith if the legal work for which the charges are made was reasonable and necessary to the surety's defense. Although IFIC obviously has some discretion under the parties' agreement to decide about the scope of the legal work for which it contracts, any decisions to pay counsel must pass a test of reasonableness in order to be in good faith. Indeed, if good faith in this context did not include reasonableness, the indemnitee would have no incentive to police its attorneys' activities and charges, since it could simply dump any and all charges billed onto the indemnitor. Such a result would make no sense.

■ Second, IFIC argues that the indemnity agreement's provision that "vouchers or other evidence of any payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety," Indemnity Agreement at ¶ 2, requires Ideal to indemnify it for the full amount of the attorney billing statements submitted. This argument fails upon assertion, for the contract provision relied on by IFIC says only that "vouchers" shall be *"prima facie evidence* of the fact and amount of liability to the Surety." This confirms that something more than evidence of mere payment will be required if a charge is challenged. Thus, this provision is hardly conclusive with regard to the amount of a reasonable fee award, but rather simply shifts to Ideal the burden of proving that the fees claimed are excessive.

■ IFIC's redaction of portions of the billing statements withholds from Ideal information essential to Ideal's efforts to meet this burden. The District Court attempted to resolve this issue by awarding attorney's fees only for the unredacted portions of the billing statements. This is not an adequate solution. As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole. The reasonableness of any one entry on an attorney's billing statement is likely to be informed by other charges incurred for the same general service. For example, the court needs to determine: Has the attorney over-charged for its services by expending a ridiculous amount of total time on a simple research task? Did the work undertaken encompass issues and tasks outside the scope of the question being litigated? Was each task undertaken a necessary and reasonable component of a reasonable litigation strategy? In this case, the general service at issue is IFIC's defense against Modern's claims and its related cross-claim against Ideal. Ideal has the right to challenge whether IFIC's disbursements for attorney's fees pertaining to this general service as a whole were reasonable.

■ Ideal is entitled to discover the information it requires to appraise the reasonableness of the amount of fees requested by IFIC, including the nature and extent of the work done by IFIC's counsel on various phases of the case, so that it may present to the court any legitimate challenges to IFIC's claim. *See National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1329 (D.C.Cir.1982). IFIC may opt to withhold billing statements under a claim of attorney-client privilege; however, where IFIC's assertion of a privilege results in the withholding of information necessary to Ideal's defense to IFIC's claim against it, the privilege must give way to Ideal's right to mount a defense. Under the common-law doctrine of implied waiver, the attorney-client privilege is waived when the client places otherwise privileged matters in controversy. *See* 6 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 26.49[5] (3d ed.1997). This court explained the rationale underlying the implied waiver doctrine in *In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982):

> Implied waiver deals with an abuse of a privilege.... Where society has subordinated its interest in the search for truth in favor of allowing certain information to remain confidential, it need not allow that confidentiality to be used as a tool for manipulation of the truth-seeking process.... [A party asserting attorney-client privilege] cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.

*Id.* at 807 (quotation omitted). This is particularly true where, as here, a party partially discloses the allegedly privileged information in support of its claim against another, but then asserts the privilege as a basis for withholding from its opponent the remainder of the information which is necessary to defend against the claim. *Accord United States v. Western Elec. Co.,* 132 F.R.D. 1, 3 (D.D.C. 1990) (where client placed counsel's actions at issue, client was precluded from asserting work-product privilege as to any documents that undermined client's position while at the same time producing work-product that supported position); Byers v. Burleson, 100 F.R.D. 436, 440 (D.D.C.1983) (attorney-client privilege impliedly waived where privileged

information is necessary to resolve precise issue which party asserting privilege interjected into the case); *Wender v. United Services Auto. Ass'n,* 434 A.2d 1372, 1374 (D.C. 1981) (by asserting its reliance on advice of counsel as a material element of its defense, party waived the attorney-client privilege with respect to all communications to or from counsel concerning the transaction). · · :

■ By claiming indemnification of attorney's fees from Ideal and offering the billing statements as evidence of the same, IFIC waived its attorney-client privilege with respect to the redacted portions of the billing statements and any other communications going to the reasonableness of the amount of the fee award. *See In re Sealed Case,* 877 F.2d 976, 980–81 (D.C.Cir.1989) ("[A] waiver of the privilege in an attorney-client communication extends to all other communications relating to the same subject matter.") (quotations omitted). If IFIC opts to claim indemnity for attorney's fees from Ideal, it must disclose the billing statements itemizing those fees in its entirety, notwithstanding its claim that portions of the billing statements are privileged. If IFIC's claim of attorney-client privilege would otherwise have been valid, the information could perhaps be examined by Ideal under seal, but in camera review by the court alone is insufficient. Thus, although "the nature and amount of proof necessary to determine reasonableness" is included within the trial court's scope of discretion in determining a reasonable fee award, *Bender,* 127 F.3d at 64, we hold that the District Court abused this discretion in failing to require IFIC to disclose the unredacted portions of the billing statements.

### III. Conclusion

We affirm the District Court's judgment finding Ideal liable, under the parties' indemnity agreement, for attorney's fees incurred by IFIC in defending against Modern's claims, but reverse and remand for determination of a reasonable fee award. Although the reasonableness of the fee award is ultimately within the District Court's discretion, Ideal must first be allowed an opportunity to challenge the reasonableness of the fees following full disclosure of the billing statements. If IFIC continues to withhold the information, then its claim for attorney's fees should be dismissed in its entirety.

On remand, the fees denied by the District Court's July 18, 1996 order should be considered together with the fees at issue in the July 1, 1996 order, since all of these fees were allegedly incurred in pursuit of the same case. In addition, the court must provide reasons to justify its determination of a reasonable award so that a reviewing court can evaluate whether it acted within its discretion. *Singer,* 779 F.2d at 70–71. Computation of a reasonable attorney's fee award requires more than simply a report of the number of hours spent and the hourly rate. It also requires the court's assessment of, among other things, the time and labor reasonably required by the case, the skill demanded by the novelty or complexity of the issues, and the incentive effects on future cases. Thus, for example, the court should exclude charges billed for services which were unnecessary to IFIC's defense against Modern's claims or its related indemnity claim. *See id.* at 71 (district court must justify awarding fees for work on issues that appellants argue are ineligible for compensation).

*So ordered.*