**PAMIDA, INC., Plaintiff,**

v.

**E.S. ORIGINALS, INC., Dynasty Footwear, Ltd., Pagoda Trading Company, Inc., and Pagoda Trading North America, Inc., Defendants.**

**No. 01–MC–10 RHK/JMM.**

United States District Court,
D. Minnesota.

March 8, 2001.

Jon S. Swierzewski, Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, for plaintiff.

Kathryn J. Bergstrom, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, Brenda S. Barton, Mitchell, Silberberg & Knupp, Los Angeles, CA, for defendants.

## ORDER

MASON, United States Magistrate Judge.

The above matter came on for hearing before the undersigned on March 5, 2001 upon Plaintiff's Motion for Protective Order and to Quash Subpoenas of Trial Counsel [Docket No. 1]. Jon Swierzewski, Esq. appeared on behalf of Plaintiff; Kathryn Berg-

strom, Esq. and Brenda Barton, Esq. appeared on behalf of Defendant Dynasty Footwear, Ltd. There were no other appearances.

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that Plaintiff's Motion for Protective Order and to Quash Subpoenas of Trial Counsel [Docket No. 1] is granted in part and denied in part as follows:

1. The Motion is granted as to the objection to producing the documents called for by paragraphs 9, 10, and 11 of Appendix A to each Subpoena.

2. The Motion is in all other respects denied.

## MEMORANDUM

Plaintiff's Motion is before this Court in connection with a case brought in the U.S. District Court for the District of Nebraska, No. 8:00 CV 146 (the "Pamida Suit"). The Pamida Suit, in turn, arises from a patent infringement case in which Susan Maxwell sued Pamida, Inc., the Plaintiff in this case, for patent infringement (the "Maxwell Suit"). Pamida is seeking indemnification from Defendants for attorneys' fees and costs incurred in the underlying Maxwell Suit.

During the Maxwell Suit, Pamida was represented by attorneys Alan M. Anderson, Renee L. Jackson, Nicholas A.J. Vliestra, Cynthia M. Klaus, and Christopher K. Larus, among others. Defendant Dynasty Footwear, Ltd. ("Dynasty") subpoenaed these attorneys in connection with the Pamida Suit.[1] Dynasty seeks to depose the attorneys and to obtain the documents specified in the attachments to the Subpoenas *duces tecum*. Plaintiff's Motion seeks a protective order, pursuant to Fed.R.Civ.P. 26(c), directing that the depositions not be had, that the documents need not be produced, and that the Subpoenas *duces tecum* be quashed. (The Parties have agreed that if the Motion is denied, the depositions will be taken on March 28 and 29, 2001.)

---

1. The subpoena served on Legal Assistant Jan Jahn was withdrawn.

Plaintiff waived any attorney-client privilege by bringing an action in which the information is relevant and material. *See Ideal Elec. Sec. Co., Inc. v. International Fid. Ins. Co.,* 129 F.3d 143 (D.C.Cir.1997).[2] See also *Medtronic, Inc. v. Intermedics, Inc.,* 162 F.R.D. 133, 134–35 (D.Minn.1995)(common factor for finding implied waiver of privilege is affirmative act by asserting party that places the protected information at issue by making it relevant).

Plaintiff incurred attorneys' fees in the sum of $750,000 in its defense of the Maxwell Suit. The Maxwell Suit was settled under terms which called for Plaintiff to pay to Maxwell the sum of $425,000, and a license fee with an ongoing royalty of 47 cents for each pair of shoes using the shoe tying system at issue in the Maxwell Suit. In this Pamida Suit, Plaintiff seeks recovery of the sums paid under this settlement, and the attorneys' fees incurred in defending the Maxwell Suit. Dynasty seeks the depositions at issue on this Motion with respect to issues which are central to the Pamida Suit. These include the liability issue of whether Plaintiff Pamida failed to give Dynasty notice of the Maxwell Suit, and its claim for indemnity, and the damages issue as to whether the attorneys' fees which were incurred were reasonable. As to the latter question, Dynasty seeks, among other things, to establish the facts as to why Pamida and its counsel rebuffed early settlement overtures which were made by the Plaintiff in the Maxwell Suit, and whether it would have been possible to achieve the settlement without having expended $750,000 in attorneys' fees.

Plaintiff asks that the Court order that the depositions of its attorneys shall not be had based upon the fact that, after the conclusion of the Maxwell Suit, it hired these attorneys to represent it in the Pamida Suit. Plaintiff relies on *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1987), and cases applying that case, as the authority for its Motion. In *Shelton,* the Eighth Circuit prevented the plaintiffs from compelling the defendant's trial attorney to reveal privileged information related to an open and on-going case. The court noted that, while opposing trial counsel is not absolutely immune from being deposed, the circumstances where such discovery is permitted should be limited. *Shelton,* 805 F.2d at 1327.

The opinion in *Shelton* examined a number of the reasons why Courts should guard against the risk that depositions of trial counsel will be used for improper tactical purposes, and not in the genuine search for material facts. Thus, in *Shelton* and the other cases relied upon by Plaintiff, discovery was limited where it could be shown that the witness did not have percipient information about a central issue. *See e.g., Mike v. Dymon, Inc.,* 169 F.R.D. 376 (D.Kan. 1996)(broad, unspecific request to depose opposing counsel regarding patent application); *Harriston v. Chicago Tribune Co.,* 134 F.R.D. 232 (N.D.Ill.1990)(no showing that prior conversations with in-house counsel were relevant to employment discrimination claim); *Advance Sys. Inc. of Green Bay v. APV Baker PMC, Inc.,* 124 F.R.D. 200 (E.D.Wis.1989)(all potentially relevant information in opposing attorney's possession was obtained from his clients).

 *Shelton* does not stand for the proposition that a party can prevent a material witness from being deposed by hiring that witness as a trial attorney. Dynasty seeks to depose these attorneys not because they are opposing trial counsel in the current Pamida Suit, but because they were trial counsel in the now-resolved Maxwell Suit. Unlike the cases relied upon by Plaintiff, in this case Plaintiff's attorneys in the Maxwell Suit unquestionably have direct percipient information as to material issues which Plaintiff knew were raised by its Complaint in the Pamida Suit.

The Court must act to prevent a party from using discovery devices in a manner which creates an improper tactical advantage. However, it must also avoid creating a circumstance by which a party, by its choice of counsel, may avoid the duty to provide depositions and other relevant and appropriate discovery. Had Plaintiff chosen attor-

---

2. At oral argument, counsel for Plaintiff did not offer any reason why the Court should consider the *Ideal* decision to be incorrect.

neys from a different firm to represent it in the Pamida Suit, the depositions of the attorneys in the Maxwell Suit would have been an obvious and routine event, since they have direct knowledge about the reasonableness of the fees they charged, the decision to continue to pursue that litigation rather than settle it, and the adequacy and timing of notice of the Maxwell Suit and their claim for indemnification by Dynasty given by Plaintiff and its attorney. A different result should not follow merely because of Plaintiff's choice of counsel.

In order to complete our analysis, we also undertake the examination suggested in *Shelton*, where the Eighth Circuit held that the Court should consider these factors: "(1) no other means exist to obtain the information than to depose opposing counsel; ... (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (citations omitted).

As we have seen, the second and third factors are indisputably present in this case. As to the first factor, Plaintiff argues that Dynasty has not shown that the information it seeks cannot be obtained from other sources, such as a review of redacted billing records, and depositions of Nickolas Westman, the expert retained by Plaintiff, and Harvey Cooper, its in-house counsel.[3] We are persuaded that these witnesses do not have the same information as would be available from the witnesses whose depositions are sought by the subpoenas under review, who have their own unique and independent information and insight, as to which alternative means for discovery are not available. Even if it were the case that these witnesses were participants in events as to which there were other participants, it would not be proper to prohibit the depositions. Where there are two or more parties to a conversation, or two or more witnesses to an event, the fact that the deposition of one of the witnesses may be taken does not constitute a sufficient reason to prohibit the deposition of the others.

We have overruled objections to Requests Nos. 1 through 8, for the reasons stated. However, Requests Nos. 9, 10 and 11 seek documents related to the Pamida Suit.[4] Dynasty has not provided the Court with facts or legal argument to support the relevance of billing records and invoices for work done solely on the Pamida Suit. The reason why these seemingly privileged records are relevant to the present suit for indemnification of fees and costs paid in the underlying Maxwell Suit is not made clear by the pleadings. We therefor grant the Motion for a Protective Order as to these documents, without prejudice.

---

**3.** Dynasty notes that Mr. Cooper was not identified as a knowledgeable witness in Plaintiff's response to Interrogatory No. 1. In addition, objections have been filed to the document requests accompanying the notices of the depositions of Westman and Cooper.

**4.** The Requests read as follows:

"9. All DOCUMENTS constituting *un-redacted* invoices, time summaries, billing statements and/or billing records that reflect attorney and/or paralegal hours spent on legal and/or consulting work on the Pamida Suit.

10. All DOCUMENTS constituting *un-redacted* invoices, time summaries, billing statements and/or billing records that reflect attorney fees for legal and/or consulting work done on the Pamida Suit.

11. All DOCUMENTS constituting *un-redacted* invoices, time summaries, billing statements and/or billing records that reflect attorney costs for legal and/or consulting work done on the Pamida Suit."